# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 02-2333

GHIDEY GEBRENGUS TESFU,

*Petitioner-Appellant*,

*v.*

JOHN ASHCROFT, Attorney General,

*Respondent-Appellee.*

Petition for Review of an Order
of the Board of Immigration Appeals
No. A77-424-768

SUBMITTED\* JANUARY 22, 2003—DECIDED MARCH 14, 2003

Before FLAUM, *Chief Judge*, and MANION and WILLIAMS, *Circuit Judges*.

FLAUM, *Chief Judge*. Petitioner Ghidey Gebrengus Tesfu seeks review of a final order of the Board of Immigration Appeals ("BIA") denying her petitions for asylum and withholding of deportation and ordering her removal from the United States to Eritrea, where she is a citizen. An Immigration Judge ("IJ") determined that Tesfu's claims

---

\* The Parties waived oral argument in this case; therefore, the appeal is submitted on the briefs and the record. See Federal Rule of Appellate Procedure 34(f).

of religious discrimination in Eritrea based on her Jehovah's Witness beliefs did not amount to past persecution or a well-founded fear of future persecution and thus found that she did not qualify for either asylum or withholding of deportation. The BIA affirmed the decision of the IJ, and for the following reasons we affirm the BIA's order.

## I. BACKGROUND

Ghidey Tesfu was born in Ethiopia in 1952 and is a citizen of Eritrea. She entered the United States in March 1998 on a valid visitor's visa and has remained here since. The Immigration and Naturalization Service ("INS") issued her a Notice to Appear in January 1999, charging her under § 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B), with overstaying her visa. Tesfu conceded deportability at her initial appearance and now seeks asylum under INA § 208, 8 U.S.C. § 1158, and withholding of deportation under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), due to a well-founded fear that she would be persecuted for her religious beliefs if forced to return to Eritrea.[1]

Tesfu bases her asylum and withholding of deportation claims on her fear that she will be persecuted in Eritrea for resisting military service on account of her religious beliefs. As a Jehovah's Witness Tesfu cannot participate in active military service or government politics without violating a fundamental tenet of her faith. Although Tesfu has never been arrested, interrogated, imprisoned, tortured, or forcibly conscripted, she testified before the IJ that

---

[1] Tesfu also asked for voluntary departure, but she is statutorily ineligible because she had not been in the United States for longer than one year when she received the Notice to Appear. INA § 240B(b)(1)(A), 8 U.S.C. § 1229c(b)(1)(A).

members of her immediate family had been persecuted in the past by the Eritrean government for being Jehovah's Witnesses. Specifically, three of her sons had been arrested and jailed for resisting conscription, and her husband had been fired from his job as an accountant and subsequently arrested and jailed. Tesfu also presented as evidence before the IJ the State Department's 1996 country report on Eritrea, which confirmed her claims that Jehovah's Witnesses faced various forms of discrimination by the Eritrean government.

The IJ credited Tesfu's testimony but found that her claims of persecution, both past and future, were insufficient to qualify for asylum or withholding of removal. In particular, the IJ found that Tesfu had suffered no incidents of past persecution and that her fear of future persecution was based almost entirely on her fear that she would be conscripted into military service if deported to Eritrea. Tesfu testified at the hearing that, although the State Department report indicated that women between the ages of 18 and 40 are eligible for military service in Eritrea, the maximum age had lately risen to 50 because Eritrea needs more of its citizens in active service to fight its war with Ethiopia. The IJ found this contention incredible because it was not corroborated by any other evidence; he also noted that even when Tesfu was younger she had never been recruited for military service while living in Eritrea. The IJ further reasoned that the 1999 peace agreement between Ethiopia and Eritrea promised a reduction, not an escalation, in armed conflict in the region. Given this evidence the IJ determined that Tesfu's fear of conscription was unlikely, and therefore her fear of persecution was unreasonable.

In making his decision to deny Tesfu asylum and withholding of deportation, the IJ took into account, from Tesfu's own testimony and the State Department's report, the various forms of discrimination suffered by Jeho-

vah's Witnesses under the Eritrean government, such as dismissals from civil service, revocation of trading licenses, and denials of passports, government housing, and identification cards. The IJ then concluded that this discrimination, without more evidence that the Eritrean government maliciously mistreated Tesfu or other Jehovah's Witnesses, did not rise to the level of systematic, state-sponsored persecution or torture that the INA requires a petitioner for asylum or withholding of deportation to establish.

Tesfu argued to the BIA on appeal that the IJ had applied the incorrect legal standards to her claims and had erred in evaluating her evidence of religious persecution. The BIA affirmed the IJ's decision, finding no error in either the IJ's legal analysis or his factual determinations. In particular, the BIA agreed with the IJ that Tesfu was unlikely to suffer forced military conscription because she is past the official draft age as reported by the State Department. Moreover, the BIA noted that even if Tesfu was drafted and subsequently jailed for resisting military service, such incarceration would not by itself constitute persecution or torture for the purpose of granting asylum or withholding of deportation. *See Nenandovic v. INS*, 108 F.3d 124, 127 (7th Cir. 1997).

## II. ANALYSIS

We review the BIA's decision to deny petitions for asylum and withholding of deportation for substantial evidence, *Ambati v. Reno,* 233 F.3d 1054, 1059 (7th Cir. 2000), and we must affirm the BIA's decision if it is supported by "reasonable, substantial, and probative evidence on the record considered as a whole." *Useinovic v. INS,* 313 F.3d 1025, 1029 (7th Cir. 2002) (quoting *Karapetian v. INS,* 162 F.3d 933, 936 (7th Cir. 1998)). Only where the evidence in support of the application is "so compelling that

no reasonable fact finder could fail to find the requisite fear of persecution" will we reverse the Board's decision for lack of evidence. *INS v. Elias-Zacarias*, 502 U.S. 478, 484 (1992).

The Attorney General has discretion to grant asylum to any alien who qualifies as a "refugee." INA § 208(a), 8 U.S.C. § 1158(b)(1); *Toptchev v. INS,* 295 F.3d 714, 719 (7th Cir. 2002). A "refugee" is defined as a person outside her country of nationality who is unable or unwilling to return to, or avail herself of the protection of, her country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). Though "persecution" is not statutorily defined, we have repeatedly described it as "punishment or the infliction of harm for political, religious, or other reasons that this country does not recognize as legitimate." *Begzatowski v. INS,* 278 F.3d 665, 669 (7th Cir. 2002). We have also said that persecution means more than plain harassment and may arise from actions such as "detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, or torture." *Mitev v. INS,* 67 F.3d 1325, 1330 (7th Cir. 1995).

To qualify as a refugee, the asylum applicant must establish by either of two ways that she possesses a well-founded fear of future persecution based on one of the statutorily protected categories. *Yadegar-Sargis v. INS,* 297 F.3d 596, 601 (7th Cir. 2002); *see also Marquez v. INS,* 105 F.3d 374, 379 (7th Cir. 1997). First, she may prove that she endured past persecution in her native country. *See Yadegar-Sargis,* 297 F.3d at 601. If the applicant establishes past persecution, there is a rebuttable presumption that she has a well-founded fear of future persecution and therefore should be granted asylum. *See Asani v. INS,* 154 F.3d 719, 722 (7th Cir. 1998). Second, the

asylum applicant may present evidence showing that she will endure future persecution if returned to her country of origin. *See Marquez,* 105 F.3d at 379. In either case the applicant must also show that her fear is "well-founded," which means both genuine and objectively reasonable. *Mitev,* 67 F.3d at 1331. Fear of persecution without a valid justification is irrational and therefore insufficient to form the basis of an asylum claim. *See Bhatt v. Reno*, 172 F.3d 978, 981-82 (7th Cir. 1999).

Under § 241(b)(3)(A) of the INA, 8 U.S.C. § 1231(b)(3)(A), the Attorney General is required to withhold an alien's deportation if her "life or freedom would be threatened" on account of her "race, religion, nationality, membership in a particular social group, or political opinion." Compared to asylum, the criteria for withholding of deportation are more stringent: the applicant must show not only a well-founded fear, but a "clear probability" of persecution. *INS v. Stevic,* 467 U.S. 407, 430 (1984). This means the applicant must prove "that it is more likely than not that . . . she will be subjected to persecution upon deportation." *INS v. Cardoza-Fonseca,* 480 U.S. 421, 430 (1987). It follows that an asylum applicant who has not established a "well-founded fear" of persecution necessarily has not shown that she faces a "clear probability" of persecution such that she is entitled to withholding of deportation. *See Topthchev*, 295 F.3d at 720.

Since Tesfu seeks asylum due to a well-founded fear of future persecution, she must show both a subjective and an objective fear of persecution by the Eritrean government on account of her status as a Jehovah's Witness. *See, e.g.*, *Mousa v. INS*, 223 F.3d 425, 429-30 (7th Cir. 2000). As noted above, in the context of asylum petitions we have defined persecution as "punishment" or "infliction of harm" for political, religious, or other illegitimate reasons "that rises above the level of mere harassment." *Tamas-Mercea v. Reno*, 222 F.3d 417, 424 (7th Cir. 2000).

Despite evidence that Jehovah's Witnesses are targeted for discrimination and treated rather badly in Eritrea, the evidence in the record is not so compelling that we must find Tesfu holds a reasonable fear of persecution upon her return. Tesfu testified that her three sons suffered mistreatment for resisting military service due to their Jehovah's Witness beliefs and that her husband lost his job and was subsequently arrested and jailed for being a Jehovah's Witness. Tesfu admitted that she personally never suffered any mistreatment due to being a Jehovah's Witness, although she claims to fear forced military conscription and possible punishment for resisting conscription if she is deported to Eritrea.

The law is well-settled that sovereign governments do not engage in persecution either when they draft citizens in order to raise armies or when they punish citizens for avoiding conscription. *Mojsilovic v. INS*, 156 F.3d 743, 747 (7th Cir. 1998). That Tesfu's desire to avoid serving in her country's military on the basis of her religious beliefs might subject her to punishment is not the same as if Eritrea sought to draft only Jehovah's Witnesses or to punish only Jehovah's Witnesses for resisting conscription. Moreover, the only evidence in the record to suggest that Eritrea drafts 50-year old women is Tesfu's own uncorroborated testimony which failed to persuade the IJ and BIA. But even if we assume she is correct, Tesfu was born on March 15, 1952, and will be past the age of conscription upon her return to Eritrea.

## III. CONCLUSION

We find that Tesfu has not established a well-founded fear of religious persecution in Eritrea due to her Jehovah's Witness beliefs, and we therefore AFFIRM the BIA's final order denying her asylum and withholding of deportation.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*