**Jaswant SINGH, Petitioner,**

v.

**John ASHCROFT, Attorney General of the United States Respondent.**

**No. 02–3666.**

United States Court of Appeals, Seventh Circuit.

Submitted Aug. 5, 2003.*

Decided Aug. 7, 2003.

Before EASTERBROOK, ROVNER, and DIANE P. WOOD, Circuit Judges.

ORDER

Jaswant Singh, a Sikh from Punjab, India, attempted to enter the United States in February 1992 without a visa. Immigration agents stopped him, and he claimed asylum based on his religious beliefs. Six and a half years later, an immigration judge denied Singh's application, finding that Singh was not credible, conditions in Punjab had changed, and Singh could relocate to other areas of India. The Board of Immigration Appeals affirmed without opinion, and Singh now petitions this court for review, arguing that the IJ erred in denying him asylum and withholding from deportation. We deny Singh's petition.

Singh filed his first asylum application in March 1992 asserting a fear of persecution based on his religious beliefs. According to Singh, Sikh separatists threatened him because he refused to join their fight for independence from India, and the police arrested him because they apparently believed Singh was part of the independence movement. In February 1996 the INS denied Singh's application (for reasons not reflected in the record) and began removal proceedings against him. Singh conceded his deportability and renewed his request for asylum.[1]

An IJ held a hearing in October 1998 on the merits of Singh's asylum application. At the hearing, Singh described his two

---

* The parties waived oral argument in this case; therefore, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(f).

1. Although Singh currently lives in California, at the time he filed his second asylum application he was living in Indiana.

arrests and beatings he suffered by Indian police. The first arrest occurred in July 1990 on the streets in Ludhiana, a city in Punjab, India. Shortly after he and his cousin were handed a leaflet by members of a Sikh political organization, four paramilitary officers arrested them for belonging to the group. According to Singh, the officers held him in a nearby jail for three days and repeatedly beat him, accusing him of belonging to the Sikh political organization. Singh said that he was hospitalized for two days as a result of the beatings.

Singh testified that the second arrest occurred in November 1991 at his family home. According to Singh, one night six armed members of a Sikh student militant group demanded to stay in his family's home. Over Singh's resistance, the men forced their way into the home, ate the family's food, and spent the night. Later, paramilitary officers searched the home and arrested only Singh. The officers detained him for six days, beating him and accusing him of helping the armed intruders. Singh said he began fainting from the beatings on the seventh day, whereupon the officers took him to a hospital in Ludhiana. He testified that a cousin who happened to work at the hospital saw him, informed his family of his whereabouts, and snuck him out through the hospital's back gate. Singh then spent a week at a hospital in Chandigarh. He soon proceeded to Dehli, and from there to Bangkok before traveling to the United States.

Singh also testified to his fear of future persecution, stating that if he returned to India, he believed he would be arrested and killed. He testified that he is "on their watch list. [His] name is with the police, whatever list you may like to call it." Even though seven years had passed since he left he left India, he testified that

officers continued to ask his wife and children about his whereabouts.

At the IJ's request, the U.S. State Department prepared an advisory opinion concerning Singh's asylum application. Based on its analysis of a 1996 India country conditions report and a 1997 addendum, the department opined that Singh's claims of police abuse on account of religion lacked substantiation and were inconsistent with prevailing country conditions. The State Department further opined that Singh's statements regarding Sikhs' inability to participate in Punjabi politics was incorrect in light of the 1997 addendum stating that Sikh political parties won a decisive victory in 1997 elections in Punjab. Finally, although the State Department's advisory letter did not highlight evidence of changed conditions, the 1996 country report revealed that Sikhs "lead tranquil and peaceful lives" outside Punjab, and the 1997 addendum revealed that many former Sikh militants were returning to a "normal life in Punjab" and that police abuse had significantly decreased since 1993.

The IJ denied Singh's application for asylum and withholding of removal, finding that Singh had failed to establish that he was entitled to asylum. The judge noted that Singh's claims were "purely self-serving and uncorroborated by any credible evidence." According to the IJ, Singh failed to produce any records to substantiate his claim that he was hospitalized on two occasions or to satisfactorily explain why he testified at the hearing that he was married and had children, when he asserted in his asylum application that he was single. Finally, the IJ noted that according to the State Department report, conditions had changed in Punjab and Singh could relocate to another area in India if he did not feel safe in Punjab.

On appeal Singh argues first that the IJ erred in finding him not credible. According to Singh, the IJ based its credibility determination on "trivial errors" in Singh's testimony that reveal nothing about his fear for his safety. But Singh's error is more than a mere mistake that the IJ should have overlooked–he affirmatively represented under oath that he was married and swore under penalty of perjury in his asylum application that he was single. Further, Singh made his marital status essential to his asylum application when he bolstered his claim with testimony that Indian officers have questioned his wife and children about his whereabouts. To evaluate this testimony, the IJ had to decide whether to believe Singh's asylum applications or his oral testimony about his marital status. We therefore find that substantial evidence supported the IJ's credibility determination. *See Pop v. INS,* 270 F.3d 527, 530–31 (7th Cir.2001); *Ahmad v. INS,* 163 F.3d 457, 461 (7th Cir. 1999).

Singh next challenges the IJ's adverse credibility finding based in part on his failure to submit documents corroborating his two hospital stays. Singh asserts that he could not control what documents were available to him. The INS responds that "in circumstances in which it is reasonable to expect someone to produce corroborating evidence, its absence may be considered in judging the applicant's credibility." The INS refers to the rule announced by the BIA in *Matter of S–M–J* that corroborating evidence "should be provided or an explanation should be given as to why such information was not provided." 21 I. & N. Dec. 722, 725 (BIA 1997). Because Singh does not challenge the soundness of this rule, we decline to reach that issue here. We note only that Singh has not suggested that he attempted to obtain hospital records and was unsuccessful, and that it has always been the asylum seeker's burden to put forth sufficient evidence. *Meghani v. INS,* 236 F.3d 843, 846 (7th Cir.2001). We decline to disturb the IJ's credibility finding on this basis.

Finally Singh argues that the IJ erred in concluding that he would not be persecuted if he returned to Punjab because conditions had changed, and in any event he could relocate to other areas in India. According to Singh, the State Department report (apparently referring to the 1996 country conditions report and 1997 addendum) did not show by a preponderance of the evidence that the conditions had changed "because it d[id] not address conditions in the immediate vicinity of petitioner's home." As evidence that he will suffer persecution if he returns to India, Singh alludes to his earlier testimony that officers questioned his wife and children at his home in India about his whereabouts.

An IJ need not find that conditions have changed in the area surrounding the asylum applicant's home because "an individual who can relocate safely within his home country cannot qualify for asylum." *INS v. Ventura,* 537 U.S. 12, 123 S.Ct. 353, 356, 154 L.Ed.2d 272 (2002) (citing 8 C.F.R. 208.13(b)(1)(i)). Here, the evidence revealed that Singh could return to areas in India besides Punjab–according to the 1996 country report, Sikhs lived peacefully outside Punjab. Further, evidence before the IJ revealed that Singh could safely return to Punjab. *See Useinovic v. INS,* 313 F.3d 1025, 1032–33 (7th Cir.2002) (changed conditions renders asylum applicant's fear of future persecution not objectively reasonable). According to the State Department's opinion letter, the 1997 elections in Punjab were peaceful, and Sikh political parties seized control. The 1997 addendum to the country report submitted by the State Department stated that for-

mer Sikh militants were returning to Punjab and leading normal lives.

Finally, regarding Singh's argument that his wife and children continue to be questioned about his whereabouts, we note that Singh has not pointed to any evidence in the record that any family member has been harmed while he has resided in the United States, and the absence of any such evidence undermines his claim to have a well-founded fear of future persecution. *See Bhatt v. Reno*, 172 F.3d 978, 982 (7th Cir.1999).

Because Singh failed to establish a well-founded fear of future persecution, he fails to demonstrate that he faces a "clear probability" of persecution and thus is not entitled to withholding of removal. *See Tesfu v. Ashcroft*, 322 F.3d 477, 481 (7th Cir. 2003).

DENIED.