**Abdelmoumene MALKI, Petitioner,**

**v.**

**John ASHCROFT, Attorney General of the United States, Respondent.**

No. 02–3767.

United States Court of Appeals, Seventh Circuit.

Argued Aug. 6, 2003.

Decided Aug. 25, 2003.

Zuhair Nubani, Schaumburg, IL, for Petitioner.

George P. Katsivalis, Department of Homeland Security, Office of the District Counsel, Chicago, IL, James A. Hunolt, Barry Pettinato, Department of Justice, Civil Division, Immigration Litigation, Washington, DC, for Respondent.

Before BAUER, POSNER, and KANNE, Circuit Judges.

## ORDER

Algerian native Abdelmoumene Malki petitions for review of an order of the Board of Immigration Appeals summarily affirming an Immigration Judge's denial of his petition for asylum and withholding of deportation. 8 U.S.C. §§ 1158, 1253(h). The IJ concluded that Malki had failed to prove his claims of past persecution and of a well-founded fear of future persecution by an Islamic terrorist group; Malki said he had been targeted and would be again because of his membership in a social group–Algerian army veterans–and because of the imputed expression of political opinion that being a veteran supposedly carries–support for the Algerian government. Because the IJ's decision was supported by substantial evidence, we deny the petition for review.

In August 1999, Malki entered the United States by air in Chicago using a false British passport. Upon arrival he disclosed his lack of valid immigration documents and requested asylum. Malki was referred to an INS Asylum Officer for a "credible fear" interview after he expressed a fear of returning to Algeria. The Asylum Officer credited his asserted fear of persecution, thus entitling him to "further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii).

The INS then initiated removal proceedings, claiming that Malki had sought admission to the United States by fraud or wilful misrepresentation, *id.*
§ 1182(a)(6)(C)(I), and without a valid entry document, *id.* § 1182(a)(7)(A)(i)(I). Malki then petitioned the INS for asylum, withholding of deportation, and protection under the Convention Against Torture. Malki appeared with counsel at the hearing on his petition and conceded that he was removable.

During his hearing Malki testified about two incidents that occurred in 1994 while he lived with his parents in Algeria. According to Malki, a neighborhood man was murdered in early June, and it was common knowledge that he was killed because he would not join an Islamic terrorist group, the Armed Islamic Group, or GIA. The man had recently served in the Algerian army, as Malki had from January 1991 until November 1992. Malki testified that he thought the GIA was recruiting recent Army veterans who knew how to handle ammunition and weapons. Algeria requires all young men to serve in the army.

Ten days after the murder, Malki continued, he was out of town when three men came looking for him at his parents' house. The men said they would return after learning that Malki was away. When Malki returned home, his parents told him about the visitors. They described the three men as rude and said they had asked for Malki by his given name, not his nickname. His parents could not tell whether the men were armed. Based on these factors, Malki's parents surmised that the men were GIA members.

Malki testified that he believed that his life was in danger, so he immediately went to live with relatives in another part of Algeria. Although the men never returned to look for Malki, his parents told him that it was too dangerous for him to return home, so Malki decided to leave Algeria. Malki made several unsuccessful attempts to gain government authorization

to leave the country in the months following the three men's visit to his home. Ultimately, Malki was able to leave with his entire family when his father was assigned to work at the Algerian embassy in Romania in 1995. Malki stayed in Romania for two years until his family returned to Algeria. Afterwards, Malki first traveled to Malaysia where he stayed until 1998, and then he visited Bulgaria and Thailand before coming to the United States in 1999. Malki's parents and four siblings remain in Algeria. No member of his family has been approached by a member of the GIA since the June 1994 incident. Malki's older brother is an army veteran and currently works for the Algerian government, as does Malki's father.

During his removal hearing, Malki argued that he suffered past persecution and faced future persecution on account of his political views and his membership in the "social group" consisting of army veterans. Specifically, Malki contended–seemingly contradictorily–that the GIA had been looking for him both because he was a recent army veteran and thus useful as a recruit and because his status as a veteran implied his expression of support for the government. He argued that the GIA would again attempt to recruit him if he returned to Algeria. Malki also claimed that the Algerian government would persecute him if he returned because he had applied for asylum.

The IJ disagreed and denied Malki's requests for asylum, withholding of deportation, and protection under the Convention Against Torture. According to the IJ, Malki had failed to establish past persecution because the visit by the three men had not risen to the level of persecution. The IJ reasoned that, even if Malki's testimony was true, he had not shown that the visit was connected to his military service or support for the government or that the

visit itself amounted to persecution. Furthermore, the IJ concluded that Malki does not have a well-founded fear of future persecution because no member of his family, specifically his father and brother who have government and army connections, has faced persecution or intimidation since the 1994 incident. The IJ also reasoned that Malki had failed to show that the GIA would still be interested in recruiting him after the passage of nine years. The IJ did not address Malki's claim that he would be persecuted by the Algerian government.

On appeal Malki challenges only the denial of his requests for asylum and withholding of deportation. Where, as here, the BIA summarily adopts the IJ's decision, we evaluate the IJ's findings and reasoning as if it were the BIA's. *Mousa v. INS*, 223 F.3d 425, 428 (7th Cir.2000). We uphold the decision so long as it was supported by "reasonable, substantial, and probative" evidence, *INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992), and will reverse only if "no reasonable fact-finder could fail to find" that Malki had suffered from past persecution or faced future persecution, *Georgis v. Ashcroft*, 328 F.3d 962, 967–68 (7th Cir.2003) (citing *Elias–Zacarias*, 502 U.S. at 484, 112 S.Ct. 812).

To be eligible for asylum, Malki was required to establish that he is a "refugee," i.e., that he is an alien unwilling or unable to return home "because of ... a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *Elias–Zacarias*, 502 U.S. at 481, 112 S.Ct. 812. He could have shown this by proving either that he (1) suffered past persecution on account of one of the enumerated categories, creating a rebuttable presumption of future perse-

cution, or (2) has a well-founded fear of future persecution on account of one of the enumerated categories. *Yadegar–Sargis v. INS,* 297 F.3d 596, 601–02 (7th Cir. 2002); *Toptchev v. INS,* 295 F.3d 714, 720 (7th Cir.2002). Although "persecution" is not statutorily defined, we have said that it "means more than plain harassment and may arise from actions such as 'detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, or torture.'" *Tesfu v. Ashcroft,* 322 F.3d 477, 481 (7th Cir.2003) (quoting *Mitev v. INS,* 67 F.3d 1325, 1330 (7th Cir.1995)). Persecution can also include threats of "death, imprisonment, or the infliction of substantial harm or suffering." *Sharif v. United States,* 87 F.3d 932, 935 (7th Cir.1996).

If an IJ determines that an alien qualifies as a refugee, the Attorney General still has the discretion to grant or deny asylum. 8 U.S.C. § 1158(b)(1). The criteria for withholding of deportation, a decision over which the Attorney General has no discretion, are more stringent than for asylum: Malki needed to show not only a well-founded fear of future persecution, but a "clear probability of persecution." *INS v. Stevic,* 467 U.S. 407, 430, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984). Therefore, if Malki failed to establish a "well-founded fear" of persecution, he necessarily has failed to show that he faces the "clear probability" of persecution that would entitle him to withholding of deportation. *See Toptchev,* 295 F.3d at 723–24.

On appeal Malki renews his argument that he faced past persecution when he was "threatened" by three GIA members who visited his house. Malki argues that his claim is supported by his testimony that the three men asked for him by his full name and that his neighbor and fellow army veteran had recently been killed by the GIA. Malki contends that this evidence would compel any reasonable factfinder to conclude that he suffered past persecution because, after the GIA came looking for him, he had a "reasonable fear that the GIA would follow through with their intentions."

■ The IJ's decision that Malki did not show he suffered from past persecution was supported by substantial evidence. First, Malki's claim of past persecution is undercut because the IJ never directly found that the men who came to the house were members of the GIA. The IJ referred to the visitors as "unknown men" because Malki testified that they did not identify themselves and he did not provide the IJ with any further evidence that would indicate who the men were.

Second, the IJ held that, even if the men were from the GIA, Malki had failed to prove he was singled out for persecution because, "due to the anarchy that exists in Algeria, these incidents frequently occur." In challenging this decision, Malki relies on a Ninth Circuit case that found that a petitioner had proven he was singled out for persecution due to his military affiliation when a group of guerillas searched his neighborhood and asked for him by a name known only by other members of the military. *See Artiga Turcios v. INS,* 829 F.2d 720, 722–23 (9th Cir.1987). Here, the men asked for Malki by his full name–the name under which he registered in the army–not his nickname. Malki argues that this proves he was being singled out due to his army service. But Malki's full name is also found on his birth certificate and passport, so there are other ways the men could have learned Malki's full name.

The IJ surmised that, given the political turmoil in Algeria, the men's visit more likely resulted from an attempt to randomly cause fear than from Malki's particular political or social affiliations. We have held that "general, oppressive conditions

that affect the entire population of a country do not provide a basis for asylum." *Petrovic v. INS*, 198 F.3d 1034, 1037 (7th Cir.2000) (citations omitted) (upholding finding that petitioner's fears of persecution were ones held by all ethnic Serbians in Croatia, so they did not prove he would be persecuted if he returned). The IJ pointed to the State Department's report that reads:

> Many Algerians seeking political asylum assert they fear for their life in the current crisis atmosphere caused by strife between government security forces on the one side and militant Islamic fundamentalist elements on the other. Such claims should be viewed in the context of the general situation, where practically all of Algeria's approximately. 27.3 million population face severe political, economic, and social problems.

Country Reports on Human Rights: Algeria, U.S. State Dep't Pub. (Mar.2002). Therefore, Malki failed to prove he was targeted because of his army service.

Third, the IJ held that even if the visitors singled out Malki because of his status or opinions, their inquiry as to his whereabouts did not rise to the level of persecution. Although Malki claims that the men threatened him, he fails to point to words or behavior to support that claim. Malki relies upon *Canjura–Flores v. INS*, 784 F.2d 885, 889 (9th Cir.1985), to support his argument that indirect threats are sufficient to establish persecution. In *Canjura–Flores*, the petitioner had an extensive background as a member of the armed opposition to the government of El Salvador and testified that his grandparents had told him that the government was trying to locate him so they could jail him. *Id.* Malki's testimony, however, does not provide any evidence of threats to third-parties. The men did say that they would

return, but they never did so. Thus, the only potentially threatening statement was never acted upon. All Malki's testimony established was that the men asked for him, but we have held that merely questioning a relative about the petitioner's whereabouts does not constitute persecution. *See Sayaxing v. INS*, 179 F.3d 515, 521 (7th Cir.1999). Because substantial evidence supports the IJ's conclusion that Malki did not suffer any past persecution, we will not disturb that finding.

█ Malki also argues on appeal that he fears future persecution because the GIA will target him when he returns to Algeria. Malki testified that his neighbor was killed because he would not join the GIA, and he now argues that the men sought him out "apparently with the same intentions as they had for his neighbor." Malki testified that the GIA was targeting recent army veterans because they possessed critical weapons knowledge. This argument suggests that the GIA was interested in recruiting Malki into their organization. The IJ reasoned that Malki had failed to prove a reasonable fear of future persecution because he could not show that the GIA would still be interested in his military knowledge after the passage of nine years. If the GIA was attempting to recruit recent veterans with knowledge of current weapons, Malki would not likely be a target in 2001 with knowledge that dates from late 1992.

Malki also testified generally that he fears future persecution because the GIA routinely targets two groups to which he belongs–government supporters and army veterans. The IJ held that Malki failed to establish that he had a genuine fear of future persecution because of the following facts: (1) neither the men nor any member of the GIA has come looking for Malki since the June 1994 incident; (2) Malki remained in Algeria until some time in

1995 without being approached by the GIA; (3) Malki's family, including his father and brother, work for the government and have not been targeted by the GIA; and (3) Malki's brother is also an army veteran and has never been approached by the GIA. These facts provide substantial evidence to support the IJ's finding; therefore, we will not disturb it. *See Toptchev*, 295 F.3d at 722–23; *Iliev v. INS*, 127 F.3d 638, 641 (7th Cir.1997).

Because substantial evidence supports the IJ's decision, we DENY the petition for review.