**Guillermo A. TORRES–TEJADA, Petitioner,**

v.

**John ASHCROFT, Attorney General of the United States, Respondent.**

**No. 02–4167.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 30, 2003.

Decided Nov. 3, 2003.

Godfrey Y. Muwonge, Milwaukee, WI, for Petitioner.

George P. Katsivalis, Department of Homeland Security, Office of the District Counsel, Chicago, IL, Daniel D. McClain, Department of Justice, Washington, DC, for Respondent.

Before BAUER, POSNER, and DIANE P. WOOD, Circuit Judges.

### ORDER

Peruvian native Guillermo A. Torres–Tejada (and, derivatively, his wife and children) petitions for review of a Board of Immigration Appeals order summarily affirming the Immigration Judge's denial of his petition for asylum, withholding of deportation, and relief under the Convention Against Torture. The Immigration Judge (IJ) concluded that Torres had failed to prove his claims of past persecution and of a well-founded fear of future persecution by the Peruvian terrorist group Shining Path. The IJ reasoned that Torres's experiences amounted only to harassment, not persecution, and that a substantially weakened Shining Path no longer presented a threat to him or his family. Because none of Torres's arguments are properly before us, we deny the petition.

Torres served in the Peruvian Air Force for thirteen years before retiring in 1989. His duties included monitoring and "sweeping" the area around airports for subversives, including the Shining Path and Tupac Amaru, another guerilla group. After retiring from the military, Torres moved to Tacna, where he lived from 1989 to April 1997 without incident. At that point Torres moved to the Arequipa province.

In Arequipa, Torres received threatening phone calls that he believed came from the Shining Path. He had experienced similar calls while still in the military, beginning in 1984. Torres presumed that the Shining Path was targeting him because he had been in the military and had participated in operations against the group. Many times if Torres's wife answered the phone she was called a "bitch," warned that she was going to die, and asked about

Torres's whereabouts. People also left Communist pamphlets outside the house and painted the walls and door with slogans typical of the Shining Path, such as "Pig Bitch," "long live Gonzalo [the Shining Path leader]," "long live the guerillas," and "long live the revolution."

After the onset of the anonymous phone calls, Torres in December 1997 rented out his house in Arequipa and moved his family to Lima to hide. In February 1998 an unidentified man appeared at the house in Arequipa, asking about Torres's whereabouts. According to Torres, his problems with the Shining Path worsened in Lima, but he has never identified any specific incidences. The Shining Path never physically threatened or attacked Torres or his family, never threatened him at his job, and never broke into his house. Those making the threats never mentioned his military background, although Torres testified that the term "Pig Bitch" refers to the military.

In the fall of 1998, Torres came with his wife and two of his children to the United States on six-month tourist visas. Two of his children remain in Peru. When the family overstayed their visas, the INS (now the Bureau of Immigration and Customs Enforcement of the Department of Homeland Security) notified them to appear for removal proceedings. *See* 8 U.S.C. § 1229a. Conceding removability, Torres and his family petitioned for asylum, withholding of deportation, and relief under the Convention Against Torture, and, in the alternative, voluntary departure.

When asked on his asylum application on what basis he or his family had been mistreated or threatened, Torres marked "political opinion," not "social group," among the enumerated categories. Torres wrote in his application, "I was a member of the Air Force of Peru during 13 years and I took action in the war zone against the Comunist (sic) Guerrilla and for that reason the members of the guerrilla threaten me and my family to kill us." Having completed his application in January 1999, Torres received several continuances prior to his hearing before the IJ on November 27, 2000. At the hearing Torres began by explaining that the Shining Path had committed acts against government institutions and innocent civilians, terrorizing people. The IJ then asked counsel to question Torres about his and his family's personal experiences. Torres testified that he believed the Shining Path had targeted him because they had identified him as a military member and because he had "once supported the government" against the group. Fearing the group, Torres had retired from the military to better hide. According to Torres, the Shining Path kept a "list" of ex-military members, using it to identify these people and kill them. Torres conceded that former Peruvian President Alberto Fujimouri had conducted an effective campaign that diminished, although did not eliminate, the Shining Path's power. Counsel for Torres chose not to deliver a closing argument.

Issuing her written decision (misstating in one sentence that Torres had opposed the government instead of the Shining Path), the IJ discussed only whether Torres had been, or would be, persecuted because of his expression of political opinion. She denied Torres's asylum request after finding that his treatment by the Shining Path had amounted to harassment and not persecution, that he had been able to relocate safely within Peru, that he had traveled to the United States twice before without requesting asylum, and that the many changes in Peru evidenced that the Shining Path no longer presented a threat to Torres. Torres and his family appealed, but two years after the IJ issued her

decision the Board of Immigration Appeals (BIA) summarily affirmed using its streamlining procedure. *See* 8 C.F.R. § 1003.1(a)(7).

In his petition for review of the BIA order, Torres makes several arguments that essentially fall into two categories: the BIA's streamlining his case and the merits of his asylum petition. The latter then has several subparts. Torres argues that he had suffered past persecution at the hands of the Shining Path, that the Shining Path still presents a threat, and that the IJ improperly ignored his social group theory regarding his claim of a well-founded fear of future persecution.

■ Before analyzing Torres's first argument that the BIA improperly streamlined his case, we briefly explain what the procedure involves. The BIA's streamlining process allows a single member to summarily affirm the IJ's decision as long as the Member 1) determines that the IJ reached the correct result; 2) concludes that any errors in the decision are harmless; and 3) determines that A) the issue on appeal is controlled by existing Board or federal court precedent, or B) the factual and legal questions presented are so insubstantial that three-Member review is not warranted. 8 C.F.R. § 1003.1(a)(7)(ii)(A), (B); *Georgis v. INS,* 328 F.3d 962, 966 (7th Cir.2003). According to Torres, the BIA should not have applied the streamlining process because the IJ's decision contains errors that are not harmless.

This contention has been rejected already. Where, as here, the BIA has summarily adopted the IJ's decision, we evaluate the IJ's findings and reasoning as if they were the BIA's. *Mousa v. INS,* 223 F.3d 425, 428 (7th Cir.2000). Thus, in *Georgis* we held that its direct review of the IJ's decision means that whether the BIA properly applied its own streamlining procedure has little significance. *See Georgis,* 328 F.3d at 967 & n. 4. Additionally, we put to rest the government's jurisdictional argument in *Georgis,* an opinion decided after the government submitted its brief. *See id.* at 967.

Having resolved Torres's first argument, we now address his challenge to the IJ's findings. We will uphold the IJ's decision so long as it is supported by "reasonable, substantial, and probative" evidence in the administrative record as a whole. *INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992); *see Meghani v. INS,* 236 F.3d 843, 846 (7th Cir. 2001). We will reverse only where the evidence is " 'so compelling that no reasonable fact-finder could fail to find' " past or a well-founded belief of future persecution. *See Georgis,* 328 F.3d at 967 (quoting *Elias–Zacarias,* 502 U.S. at 484).

To be eligible for asylum as a refugee, a petitioner is required to establish that he is an alien unwilling or unable to return home "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *see Elias–Zacarias,* 502 U.S. at 481. The petitioner can make this showing by proving either that he 1) suffered past persecution on account of one of the enumerated categories, creating a rebuttable presumption of future persecution, or 2) has a well-founded fear of future persecution on account of one of the enumerated categories. *Yadegar–Sargis v. INS,* 297 F.3d 596, 601 (7th Cir.2002); *Toptchev v. INS,* 295 F.3d 714, 720 (7th Cir.2002). Although not statutorily defined, persecution must cross the line from mere harassment to actions such as "detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, or torture." *Yadegar–Sargis,* 297

F.3d at 602 (internal quotations and citations omitted).

If an IJ determines that an alien qualifies as a refugee, the Attorney General still retains discretion to grant or deny asylum. 8 U.S.C. § 1158(b)(1). The rule is different for withholding of deportation and for relief under the Convention Against Torture; if the criteria for either is established the Attorney General has no discretion to refuse asylum. The required showing, however, is more stringent than for asylum: a petitioner must show a "clear probability of persecution" for both withholding of deportation and for relief under the Convention Against Torture. *INS v. Stevic,* 467 U.S. 407, 430, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984); *see Tesfu v. Ashcroft,* 322 F.3d 477, 481 (7th Cir.2003); *Dandan v. Ashcroft,* 339 F.3d 567, 575 n. 7 (7th Cir.2003). Therefore, if a petitioner cannot establish a well-founded fear of future persecution, he necessarily will have failed to prove a clear probability of persecution.

■■■ Here Torres waived both his past persecution claim and his challenge to the IJ's finding about the Shining Path's viability by not sufficiently presenting these arguments to the BIA. Torres challenges the IJ's conclusion that in Peru he suffered only harassment, not persecution. But Torres never briefed this question before the BIA. And all he does here is offer a conclusory statement that he had at least established past persecution. Since Torres failed to adequately develop this argument, he has waived it. *See Toptchev,* 295 F.3d at 721 (failure to exhaust administrative remedies constitutes waiver); *United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th Cir.1991). Further harming his appeal, before the BIA Torres did not challenge as unsupported the IJ's finding regarding the "almost non-existent" Shining Path, even though he has raised the issue

before us. Hence, we do not have jurisdiction to review this issue. *See Toptchev,* 295 F.3d at 721. Additionally, because Torres did not appeal to the BIA or place before us the IJ's rejection of his well-founded fear of future persecution on account of political opinion, we do not review the argument. *See id.*

■■■ What remains is Torres's argument that the IJ failed to address his social group theory. Torres explicitly raised this issue before the BIA and does again in this court, so this time waiver is not the problem. The question here is whether Torres even presented his social group theory to the IJ in the first place, i.e., by checking only "political opinion" and not "social group" on his asylum application, did Torres fail to adequately alert the IJ to the argument? *See, e.g., Lwin v. INS,* 144 F.3d 505, 510 (7th Cir.1998); *Desta v. Ashcroft,* 329 F.3d 1179, 1185 (10th Cir.2003) (waiving country designation by not answering the IJ when asked).

In *Lwin* we held that the petitioner preserved his social group theory by raising it through a supplemental statement to his application, additional affidavits, his testimony before the IJ, and his BIA brief, despite having failed to check the box in his asylum application. *See Lwin,* 144 F.3d at 510. Torres, however, did far less than Lwin in alerting the IJ to his social group theory. Although Torres completed the asylum application without assistance of counsel, which suggests generously construing his application, *cf. Aguilera–Cota v. INS,* 914 F.2d 1375, 1382 (1st Cir.1990), he never amended it after obtaining counsel to include persecution on account of social group. Torres argues in his opening brief that his social group theory was "not difficult to glean" from his application and testimony. But because his political opinion and social group theories relied on the same basis, Torres's testimony as to his

fear on account of his prior military service understandably would not alert the IJ to his additional social group argument. And although Torres argues that the IJ directed him toward testifying about his personal experiences, counsel for Torres never clarified to the IJ that Torres was basing his well-founded fear on membership in a particular social group–whether through commentary, the shaping of Torres's testimony, or a closing argument. *See Debab v. INS*, 163 F.3d 21, 26 (1st Cir.1998) (despite numerous opportunities, failing to articulate to the IJ the protected category that formed the basis of his well-founded fear). Finally, when the INS contended in its brief that Torres waived this theory by not raising it before the IJ, Torres did not respond to the argument in a reply brief to this court. Like the asylum applicant in *Debab*, Torres carried the burden of specifying to the IJ the protected category on which his well-founded fear claim rested. *See id.* By his actions before the IJ, however, Torres failed to present any argument concerning social group, and thus the IJ cannot be faulted for not discussing this theory.

Accordingly, because there are no issues properly before us, we DENY the petition.