# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-3870

MEI DAN LIU,

*Petitioner*,

v.

JOHN D. ASHCROFT, Attorney General
of the United States,

*Respondent.*

———————

Petition for Review of an Order of
the Board of Immigration Appeals.
No. A78-863-174

———————

ARGUED JUNE 4, 2004—DECIDED AUGUST 17, 2004

———————

Before FLAUM, *Chief Judge*, and DIANE P. WOOD and
EVANS, *Circuit Judges*.

FLAUM, *Chief Judge*. This matter is a Petition for Review of
an Order of Removal issued by the Board of Immigration
Appeals ("BIA") brought by Petitioner Mei Dan Liu, a
native and citizen of the People's Republic of China. Mei
Dan fled China at the age of sixteen because, according to
her, the local government officials believed that she was a
follower of Falun Gong, the Chinese health and spiritual
movement that was outlawed by the Chinese government in
1999. As a result of her imputed membership in Falun

Gong, Mei Dan claims that she was arrested, jailed, physically abused, interrogated, threatened, expelled from school, and her home was ransacked.

Upon arriving in the United States after a long journey, Mei Dan was detained and placed in removal proceedings. At that time, she requested political asylum and was referred to the Immigration Court in Chicago, Illinois. An Immigration Judge ("IJ") denied Mei Dan's applications for asylum under § 208(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158(a), withholding of removal under § 241(b)(3) of the INA, 8 U.S.C. § 1231(b)(3), and for relief under the United Nations Convention Against Torture, as implemented in 8 C.F.R. § 208.16(c). The BIA dismissed Mei Dan's appeal of the Immigration Judge's ("IJ") decision. Mei Dan then petitioned this Court for review of her asylum claim. For the reasons stated in this opinion, we deny the petition for review and affirm the decision of the BIA.

## I. Background

The BIA found that even if it accepted Mei Dan's testimony as true, she failed to establish her eligibility for asylum. In reviewing the BIA's decision, we too accept the facts as Mei Dan presented them at her asylum hearing.

* * * * *

Mei Dan testified as follows: Until she fled China at age sixteen, Mei Dan lived with her parents and younger brother in Tin Tou Village in Fuzhou City, in the Fujian Province, China. Her father worked as a rock miner and her mother was a homemaker who also cleaned other people's houses and babysat children. Mei Dan was a student, but often worked odd jobs to supplement the family's income. In November 2001, a neighbor sympathetic to Mei Dan's family's financial situation gave Mei Dan books to sell in the local park. As it turned out, a number of the books were

associated with Falun Gong. While Mei Dan was selling the books along with the neighbor in the park, a group of local government officials came by to inspect the vendors. The neighbor ran away, but the officials apprehended Mei Dan, confiscated her books, and took her forcibly to the Village Committee Office.

At the Village Committee Office, the police interrogated Mei Dan and accused her of being a follower of Falun Gong. Although Mei Dan had seen some Falun Gong practitioners in the park before, she was not familiar with the movement and had never herself been a follower. The police pressured her to confess to an involvement in Falun Gong, but she refused and insisted that she was only selling books. The police then pulled Mei Dan's hair, which caused her to cry, and pushed her backwards off of her chair and onto the ground. After the interrogation, the police placed Mei Dan in a jail cell. During her detention, the police and guards continued to pressure Mei Dan to confess. At one point, a guard pushed her to the ground, pulled her hair, and taunted her when she refused to confess. Mei Dan was released after two days in detention when her parents paid 5,000 yuan as bail. The police issued Mei Dan an "arrest certificate," and advised her to think about what happened. The police reported her arrest to her school, and as a result Mei Dan was expelled.

One month later, the police searched and ransacked Mei Dan's family's apartment while Mei Dan and her mother were home alone. The police came into the apartment and began questioning Mei Dan and her mother about Mei Dan's affiliation with Falun Gong. The police told Mei Dan's mother that they did not believe Mei Dan's denials. The police pushed Mei Dan's mother to the floor and warned Mei Dan that they had ransacked the apartment as "a lesson for you . . . to think about." Frightened by this incident, Mei Dan's family decided that for her safety she should flee China and stay with a cousin in the United States.

Assisted financially by a relative, Mei Dan fled China in March 2002. She left China with a valid Chinese passport and travel papers. She traveled to Hong Kong; then to Thailand; and then to Holland, where she stayed for several weeks. While in Holland, someone took Liu's Chinese passport and gave her a Japanese one, instructing her to use it in the United States.

* * * * *

On May 24, 2002, having spent two months in transit, Mei Dan arrived by plane at Chicago's O'Hare International Airport, presented her invalid Japanese passport, and was immediately detained. Although she admitted her true name and country of origin, she represented to immigration officials that she was an adult and fled China because she was arrested for living with her boyfriend. She later testified that she misrepresented these facts because people in China warned her that she would be immediately deported to China if she admitted to being a minor. She was also told that saying she was arrested for living with her boyfriend would help her obtain asylum. Believing that she was an adult, immigration officials placed Mei Dan in an adult jail. Four months later, upon discovering that she was in fact a minor, officials transferred her to a juvenile facility. She was placed back in the general population of the McHenry County Jail on her eighteenth birthday.

Mei Dan's case was referred to an IJ for an asylum-only proceeding. Mei Dan obtained from her parents copies of the arrest certificate and receipt for her bail, as well as a letter from the neighbor who gave Mei Dan the Falun Gong books. A hearing was held before the IJ at which Mei Dan testified. Following the hearing, the IJ issued an oral decision denying relief on the ground that in his view Mei Dan was not a credible witness. The IJ found that Mei Dan's testimony regarding the mistreatment she endured was not "worthy of belief," that the various misstatements she

offered regarding her age and the basis of her asylum claim "undercut[ ] her credibility," and that the unauthenticated documents she provided were not "credible or reliable." In his decision, the IJ indicated that he believed Mei Dan had fled China to attend college in the United States and that the Chinese government would not treat a minor in the manner that Mei Dan described.

Mei Dan appealed to the BIA. The BIA affirmed on the ground that Mei Dan's testimony, if accepted as true, failed to demonstrate that she was persecuted, or that she held a well-found fear of future persecution. Mei Dan then petitioned this Court to review that determination.

## II.  Analysis

### A.  Scope of Review

The first issue presented is whether we should review the BIA's order standing alone or as supplementary to the IJ's decision. In cases where the BIA's opinion merely supplements the opinion of the IJ, the IJ's opinion as supplemented by the BIA's opinion becomes the basis for review. *See Niam v. Ashcroft*, 354 F.3d 652, 655-56 (7th Cir. 2004). When the BIA issues its own opinion rather than adopting or merely supplementing the opinion of the IJ, the Court reviews only the decision of the BIA, not that of the IJ. *See Begzatowski v. INS*, 278 F.3d 665, 669 n.5 (7th Cir. 2002). Mei Dan contends that the BIA's opinion merely supplements the IJ's decision, whereas the Attorney General argues that the BIA issued a freestanding opinion that provides a reasoned explanation of the decision to deny asylum.

We agree with the Attorney General. The BIA's decision rested on grounds that were in the alternative to the ones the IJ used in dismissing Mei Dan's petition. The BIA clearly stated that even if it accepted that the IJ erred in its credibility determination, the evidence Mei Dan presented

failed to satisfy her burden of proving eligibility for asylum. The BIA did not make its determination based on the facts as the IJ found them to be, but rather purported to view the facts in the light most favorable to Mei Dan. The BIA conducted its own analysis of the evidence and declined to adopt, affirm, or even address the adverse credibility determination that was the basis of the IJ's opinion. Consequently, we are limited in our review to the findings and conclusions of the BIA, which do not include an evaluation of the IJ's credibility determination.

### B.  Standard of Review

We review the BIA's decision under the "highly deferential version of the substantial evidence test, which requires us to affirm if the [BIA]'s decision to deny asylum is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Karapetian v. INS*, 162 F.3d 933, 936 (7th Cir. 1998) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). We will not grant the petition for review unless the petitioner shows that "the evidence not only *supports* [reversal of the BIA's decision], but *compels* it." *Elias-Zacarias*, 502 U.S. at 481 n.1 (emphasis in original).

### C.  Asylum

To establish eligibility for asylum, an applicant must demonstrate that she is a "refugee" under the INA. *See Bace v. Ashcroft*, 352 F.3d 1133, 1137 (7th Cir. 2003). To establish that she is a refugee, Mei Dan must show that she was persecuted in the past or has a well-founded fear of future persecution on account of her race, religion, nationality, membership in a social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A). It is Mei Dan's burden to prove that she is a refugee and is eligible for asylum. 8 C.F.R. § 208.13(a).

Under the view we take of the facts, the Attorney General does not challenge that Mei Dan's "persecution" would be "on account of" one of the statutory grounds. *See* 8 U.S.C. § 1101(a)(42)(A). While neither Mei Dan nor her family were ever followers of the Falun Gong movement, membership was imputed to her by the Chinese authorities. *See Lwin v. INS*, 144 F.3d 505, 509 (7th Cir. 1998) (explaining that one way an applicant can establish a political opinion is by showing that it was attributed to the applicant by her persecutors). Rather, at issue in this case is whether the type of treatment Mei Dan experienced in the past qualifies as "persecution" and whether she has a "well-founded fear of persecution" if she returns to China.

Whether past or future, persecution is defined as "punishment or the infliction of harm for political, religious, or other reasons that this country does not recognize as legitimate." *Roman v. INS*, 233 F.3d 1027, 1034 (7th Cir. 2000) (citations omitted). This Court has "recognized the hard truth that unpleasant and even dangerous conditions do not necessarily rise to the level of persecution." *Mitev v. INS*, 67 F.3d 1325, 1331 (7th Cir. 1995). Although to suffer persecution an asylum seeker need not have been the victim of actions as severe as threats to life or freedom, the harm experienced must constitute more than mere harassment. *See Bace*, 352 F.3d at 1137-38.

If an applicant is found to have suffered past persecution, she is entitled to a presumption of a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1); *see also Dandan v. Ashcroft*, 339 F.3d 567, 573 (7th Cir. 2003). In the absence of such a finding, the applicant must prove that she genuinely fears she will be persecuted based on a protected ground if returned to her native country, and that her fears are objectively reasonable. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 430-31 (1987); *Tesfu v. Ashcroft*, 322 F.3d 477, 481 (7th Cir. 2003). The subjective component can be satisfied by the applicant's "candid, credible, and sincere testimony,"

whereas the objective element can be proven through "credible, direct and specific evidence in the record of facts that would support a reasonable fear that the petitioner faces persecution." *Ahmad v. INS*, 163 F.3d 457, 461 (7th Cir. 1999) (citations omitted); *see also Useinovic v. INS*, 313 F.3d 1025, 1030 (7th Cir. 2002); *Bhatt v. Reno*, 172 F.3d 978, 982 (7th Cir. 1999).

The BIA concluded that, even accepting that Mei Dan was a credible witness, the incidents she recounted, "cumulatively, do not rise to the level of persecution." To summarize, Mei Dan describes two encounters with the Chinese authorities. In the first, she was detained for two days after selling books about Falun Gong in the local park and she was released upon payment by her parents. While in detention, officials twice pushed Mei Dan to the ground and pulled her hair. Shortly after this incident, she was expelled from school. The second encounter occurred approximately one month later, when officials came to Mei Dan's home and again accused her of following Falun Gong. The officials overturned furniture and pushed her mother to the ground.

As we indicated above, some actions that are less severe than life-threatening may rise to the level of persecution. *See e.g.*, *Bace*, 352 F.3d at 1138 (finding persecution where applicant was beaten successively by multiple assailants, was attacked and cut with a razor, his home was broken into, his father beaten, and his wife raped in front of him and his family); *Asani v. INS*, 154 F.3d 719, 725 (7th Cir. 1998) (finding that persecution likely occurred where applicant was detained for two weeks, beaten resulting in the loss of two teeth, deprived of food and water, kept in a cell with no room to sit, and chained to a radiator); *Vaduva v. INS*, 131 F.3d 689, 690 (7th Cir. 1997) (acknowledging past persecution where applicant was punched, his face was bruised, and his finger broken). Indeed, we have recognized that actions such as "detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property,

surveillance, beatings, or torture might cross the line from harassment to persecution." *Ciorba v. Ashcroft*, 323 F.3d 539, 545 (7th Cir. 2003) (citations omitted). However, recognizing that these sorts of activities *might* rise to the level of persecution is not the equivalent of saying that they always do. Persecution claims cannot simply be evaluated against a generic checklist. Review of an applicant's past experience must be carried out on the most specific level—it is the details that reveal the severity of the particular situation.

Here, Mei Dan's detainment was relatively short. As physical brutality goes, hair-pulling and pushing rank on the less serious end. The search and ransack was a singular event and it is unclear if the officials caused any serious, permanent damage to her home. Taken as a whole, it was not improper for the BIA to determine that these and the other incidents of which Mei Dan complained are more akin to abusive or harassing treatment than persecution. *See, e.g.*, *Dandan*, 339 F.3d at 574 (holding that three-day detention which included interrogations, beatings, and deprivation of food and water, did not compel a conclusion of past persecution); *Zalega v. INS*, 916 F.2d 1257, 1260 (7th Cir. 1990) (upholding BIA's determination that alien had not been persecuted despite four years of intermittent searches, arrests, and detainments); *Kubon v. INS*, 913 F.2d 386, 388 (7th Cir. 1990) (finding that brief confinement for political opposition to a totalitarian regime did not constitute persecution). While the treatment of Mei Dan in China was undoubtedly deplorable, substantial evidence supports the BIA's determination that it did not amount to "persecution" within the meaning of the INA.

Mei Dan argues that even if the treatment she suffered would not ordinarily rise to the level of persecution, it does in her case because she was a minor at the time of the events in question. Mei Dan contends that the BIA failed to give adequate consideration to this factor. We do not disagree with Mei Dan that age can be a critical factor in

the adjudication of asylum claims and may bear heavily on the question of whether an applicant was persecuted or whether she holds a well-founded fear of future persecution. The *Guidelines for Children's Asylum Claims* advises that "harm a child fears or has suffered . . . may be relatively less than that of an adult and still qualify as persecution." *See Guidelines for Children's Asylum Claims, INS Policy and Procedural Memorandum from Jack Weiss, Acting Director, Office of International Affairs to Asylum Officers, Immigration Officers, and Headquarters Coordinators (Asylum and Refugees)* 14, (Dec. 10, 1998), *available at* 1998 WL 34032561. Indeed, other courts have used age as a determinative factor in deciding whether an applicant is eligible for asylum. *See, e.g., Abay v. Ashcroft,* 368 F.3d 634, 640 (6th Cir. 2004) (overturning, on the basis of age, the immigration judge's finding that a nine-year-old applicant had not adequately expressed a fear of future persecution).

We do, however, disagree with Mei Dan's position that the BIA failed to sufficiently address her age in its analysis and that its findings are not supported by substantial evidence. Although the BIA's order does not specifically mention Mei Dan's age, it does discuss her expulsion from school. From this acknowledgment we can reasonably infer that the BIA was aware of Mei Dan's age. A more direct and fulsome treatment of age was not required in this case. There may be situations where children should be considered victims of persecution though they have suffered less harm than would be required for an adult. But this is not such a case. Though a minor, Mei Dan was near the age of majority—she was sixteen—at the time the events took place. Whatever slight calibration this may warrant in our analysis is insufficient to transform her experiences with the Chinese authorities from harassment to persecution.

Next, we turn to the issue of whether Mei Dan has demonstrated a well-founded fear of being persecuted if she returns to China. We begin by noting the shortcomings of the BIA's analysis of this issue. After claiming that it was

viewing the facts in the light most favorable to Mei Dan, the BIA approached its discussion of whether she had a well-founded fear of future persecution by questioning whether the government actually imputed membership in Falun Gong to her. The BIA stated that "[i]t is unclear whether the government officials actually believed she was a follower of the Falun Gong, if they were still investigating her involvement with Falun Gong, or if their actions were based on retribution for her violating laws on selling illegal religious materials." The BIA then noted that there is no evidence indicating that Mei Dan's "punishment was disproportionate to other individuals selling illegal contra-band." Considering Mei Dan's testimony that government officials repeatedly accused her of following Falun Gong and refused to believe her and her mother's denials that she had no part in the movement, it was inaccurate for the BIA to find that a question remained about whether membership was imputed to her by the Chinese authorities and to suggest that her treatment was mere punishment for selling illegal books. If the BIA chooses to credit an applicant's presentation of the facts, it must conduct its analysis in accordance with a reasonable interpretation of that presentation.

Despite the BIA's error, we conclude that substantial evidence supports its ultimate conclusion that Mei Dan did not prove a well-founded fear of persecution. While the BIA was without basis to suggest that government officials never actually believed Mei Dan was a follower of Falun Gong, a legitimate question remains regarding whether government officials continue to impute membership in Falun Gong to Mei Dan. After the search of her apartment, Mei Dan suffered no further consequences before leaving China three months later. Indeed, using her own passport, she was allowed to leave China without any problems. The record simply does not reflect that the government continues to impute Falun Gong membership to Mei Dan, thus we

uphold the BIA's determination that Mei Dan failed to demonstrate a fear of future persecution on that basis.

### D.  Excluded Evidence

Mei Dan argues on appeal that she was prejudiced by the IJ's refusal to hear (and consequently, the BIA's inability to consider) evidence regarding the alleged past persecution suffered by her parents, purportedly for contravention of China's family planning mandates. According to Mei Dan's brief testimony on this matter, after giving birth to Mei Dan's brother in 1986, Mei Dan's mother was detained, forcibly sterilized, and along with Mei Dan's father forced to pay a fine for having a second child. Mei Dan contends that this evidence was important to demonstrate the state of mind of her parents. Foreign persons in the United States are entitled to due process of law, which for an asylum applicant, includes "a meaningful opportunity to be heard." *Kerciku v. INS*, 314 F.3d 913, 917 (7th Cir. 2003) (citations omitted). However, an asylum applicant is not deprived of a meaningful opportunity to be heard where the IJ limits the extent of testimony to "serve to focus the proceedings and exclude irrelevant evidence." *Id.* at 917-18. The testimony relating to the Chinese family planning authorities' treatment of Mei Dan's mother was not improperly excluded. The event occurred approximately 15 years prior to the events at issue in this case and was unrelated to Mei Dan's claim of persecution based on her imputed membership in Falun Gong. Clearly, Mei Dan has not shown that the testimony excluded by the IJ would, if admitted at a new hearing, potentially affect the outcome of her case. *See Roman v. INS*, 233 F.3d 1027, 1033 (7th Cir. 2000). As it was unnecessary for both the BIA's and our analysis to reach the issue of Mei Dan and her family's subjective fear, and the excluded evidence adds scant weight to the question of an objective fear of future persecution

(which we also did not need to address given our conclusion about the lack of evidence that the government continues to impute membership to Mei Dan), Mei Dan suffered no prejudice from its exclusion.

### III. Conclusion

The petition for review of the BIA's order is hereby DENIED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*