**Benjamin ORTIZ–PALMA, Petitioner,**

v.

**John ASHCROFT, Respondent.**

No. 03–2371.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 6, 2004.

Decided Jan. 24, 2005.

William B. Schiller, Davidson & Schiller, Chicago, IL, for Petitioner.

George P. Katsivalis, Chicago, IL, for Respondent.

Before BAUER, COFFEY, and EVANS, Circuit Judges.

### ORDER

Benjamin Ortiz–Palma ("Ortiz") claims to fear that if deported to his native Guatemala he will be persecuted on the basis of political opinion purportedly inferable from his past union membership. Ortiz applied for asylum, withholding of removal, and relief under the Convention Against Torture. The Immigration Judge ("IJ") denied relief and the Board of Immigration Appeals ("BIA") summarily affirmed. We deny Ortiz's petition for review.

Ortiz entered the United States in 1990 on a short-term visa. Three years later he applied for asylum claiming past persecution and· fear of future persecution based on political opinion. In his application Ortiz detailed the underlying circumstances: In Guatemala he was employed as a factory worker by Industria Centro America de Vidrios, SA, a glass manufacturer. Ortiz was a union member, and in early 1990 he participated with other workers in a strike. During the strike Ortiz was followed by unmarked vehicles and received an anonymous letter advising him to stop participating in the strike. The letter did not contain any explicit threat, but Ortiz explained that it made him fearful because he linked it with past anti-union violence, particularly in the late 1970s and early 1980s when a number of union activists were kidnapped or disappeared. The factory closed permanently in May 1990, and after a few months of difficulty finding employment— Ortiz believed he had been blacklisted because of his union membership—he left Guatemala for the United States.

At an asylum hearing conducted in March 2000, Ortiz provided more detail about his union affiliation. He testified that he became a member in 1972, though he did not always pay dues and his union card showed a 1976 expiration date. He never held an office. Apart from attending meetings, his union activity was limited to organizing sporting events for other members. And he conceded that the only adverse actions he attributed to his membership were the instances during the 1990 strike when he was followed and received anonymous letters (his asylum application and hearing testimony conflict as to the number of letters). While Ortiz's asylum application recounts that he was unable to find employment in Guatemala, he testified at the hearing that he had not come to the United States to find work, and that his income in Guatemala was sufficient.

At the asylum hearing Ortiz also made a number of assertions that he could not substantiate when pressed to do so. First, when asked by the IJ to identify co-workers subjected to anti-union violence, Ortiz provided names of union leaders who disappeared or were killed in the 1970s and 1980s. After the IJ directed him to name co-workers harmed during the 1990 strike, Ortiz testified that four individuals disappeared during that period and for corroboration pointed to Amnesty International reports in the record. However, these reports do not describe any kidnappings or

deaths in connection with the glass factory strike, nor do they mention the names Ortiz proffered. Second, Ortiz was unable to produce evidence that his union is currently a target of anti-union violence. He represented that unspecified information in the record demonstrates that the union had suffered recent violence, but we are unable to locate any post–1991 reference to his union. Finally, Ortiz was not even aware if the glass company was still in existence.

In denying relief, the IJ reasoned that the conduct Ortiz described amounted to mere harassment, not past persecution. The IJ also concluded that Ortiz did not have a well-founded fear of persecution should he be returned to Guatemala because he was no longer a union member, and because significant political changes have taken place in Guatemala since 1990. And since the standard for both withholding of removal and relief under the Convention is higher than that required for asylum, the IJ concluded Ortiz was not eligible for relief under those two alternatives.

Ortiz now petitions for review. If the BIA summarily affirms the decision of the IJ, as it did here, the IJ's decision becomes the agency's final decision. 8 C.F.R. § 1003.1(e)(4); *Ememe v. Ashcroft,* 358 F.3d 446, 450 (7th Cir.2004). We review that decision under the highly deferential substantial-evidence test, requiring affirmance if the decision is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992); *See Ememe,* 358 F.3d at 450–51. Accordingly, we will not overturn the IJ's determination unless the evidence in the record compels a contrary conclusion. *Nigussie v. Ashcroft,* 383 F.3d 531, 534 (7th Cir.2004). To qualify for asylum, a peti-

tioner must show he is a refugee by proving he was persecuted in the past or has a well founded fear of future persecution on account of race, religion, nationality, membership in a social group, or political opinion. 8 U.S.C. § 1101(a)(42); *Liu v. Ashcroft,* 380 F.3d 307, 312 (7th Cir.2004). A petitioner's experience of past persecution gives rise to a rebuttable presumption that he has a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1); *Liu,* 380 F.3d at 312.

Neither the IJ's decision nor the parties' briefs discuss whether Ortiz's union membership qualifies as an expression of political opinion. Nor have we had occasion to decide if or under what circumstances union activity might equate with political opinion for asylum purposes. The question has been explicitly addressed in only one circuit, in a case like this one involving labor unions in Guatemala. *See Osorio v. INS,* 18 F.3d 1017 (2d Cir.1994). In *Osorio,* the court held that a union leader's activities implied a political opinion. *Id.* at 1030–31. Osorio, an elected official of a sanitation workers' union, negotiated with the government and organized demonstrations and strikes. He was soon terminated for these activities, after which he organized a mass media campaign accusing the government of human rights violations committed against union members. *Id.* The Second Circuit concluded that Osorio's union activities, coupled with his actions taken after his termination, implied a political opinion because his activities were in opposition to the prevailing government's policies. *Id.* The court rejected the view that a union member's activities can be deemed an expression of political opinion merely because the government viewed them as subversive, and focused instead on the combination of Osorio's union activities and the actions he took after termination, which together represented a political threat. *Id.; see also Morales v. INS,* 208

F.3d 323 (1st Cir.2000) (holding that petitioner, who alleged brief participation in the same 1990 strike as Ortiz, was insufficiently involved in union activities for the Guatemalan government to impute a political opinion). Thus, even if we were to adopt *Osorio,* we would conclude that Ortiz's evidence of mere union membership—without any substantial involvement in union activities focused on government policies—is not sufficient to infer a political opinion, leaving him without a basis to claim refugee status.

■ Nonetheless, whether or not Ortiz's union membership or activities can be characterized as an expression of political opinion, his evidence of mistreatment does not compel a conclusion that he suffered persecution. Persecution need not threaten the petitioner's life or freedom, but it must rise above the level of mere harassment. *Bhatt v. Reno,* 172 F.3d 978, 981 (7th Cir.1999). There is no particular checklist for actions that we deem to be persecution, but the bar is higher than the incidents described by Ortiz. Police surveillance does not amount to persecution and is merely harassment. *See Roman v. INS,* 233 F.3d 1027, 1034 (7th Cir.2000) (holding that surveillance, threats, and harassment did not amount to persecution); *Mousa v. INS,* 223 F.3d 425, 430 (7th Cir.2000) (holding that being subjected to regular police questioning and surveillance can be characterized as mere harassment). Nor does economic hardship that is neither substantial nor deliberate. *See Capric v. Ashcroft,* 355 F.3d 1075, 1092 (7th Cir.2004); *Borca v. INS,* 77 F.3d 210, 216 (7th Cir.1996). Ortiz believes he was deliberately blacklisted, but he left Guatemala for the United States just three or four months after the glass factory closed. From such a short period no particular reason for Ortiz's inability to obtain other employment can be inferred—if indeed he

was unemployed, given his testimony before the IJ that when he departed Guatemala he had a sufficient income and did not come to the United States seeking work. Moreover, while sometimes even threats to life or freedom and threats to inflict suffering or harm can amount to persecution, only threats of a most immediate and menacing nature qualify. *Ahmed v. Ashcroft,* 348 F.3d 611, 616 (7th Cir.2003); *Boykov v. INS,* 109 F.3d 413, 416 (7th Cir.1997); *Mitev v. INS,* 67 F.3d 1325, 1330–31 (7th Cir.1995). The letter or letters Ortiz received did not portend any imminent harm or danger; they merely warned him to stop participating in the strike. Ortiz however, continued to participate with no ill consequences, and we have said that unfulfilled threats are generally insufficient to establish past persecution. *Ahmed,* 348 F.3d at 616.

■ Neither does Ortiz's evidence compel a conclusion that he has a well-founded fear of future persecution. As Ortiz notes, the record does include reports of recent violence against leaders of other unions in Guatemala. But his focus on continuing anti-union violence obscures the relevant issue of whether he currently holds a political opinion, or will have one imputed to him if he is returned to Guatemala, that is adverse to the Guatemalan government. There is no evidence that Ortiz is, or ever was, a union leader. At best he was a rank-and-file member; his most prominent role was organizing sporting events. His membership is long expired. He offered no evidence of recent violence directed against his own union, nor did he know if the factory where he worked even exists today. Most significantly, Ortiz never testified at his asylum hearing that if he were to return to Guatemala he would be active in the same or any other union.

Ortiz's evidence does not compel the conclusion that he suffered past persecu-

tion or that he has a well-founded fear of future persecution. And, because he failed to establish entitlement to asylum, his additional claims for withholding of deportation and relief under the Convention, given the more stringent requirements, must also fail. *Ahmed,* 348 F.3d at 619. Accordingly, the petition for review is DENIED.