UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued June 14, 2005
Decided June 23, 2005

**Before**

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 04-3605

XI LONG LI,
     *Petitioner*,

     *v.*

ALBERTO R. GONZALES, Attorney
General of the United States,
     *Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals

No. A78 751 153

**O R D E R**

Chinese citizen Xi Long Li applied for asylum, withholding of removal, and relief under the Convention Against Torture, claiming that he was persecuted in the past because of his Christian beliefs and that he will suffer future persecution on that basis if he returns to China. An immigration judge denied his application, finding that Li had not established either past persecution or a well-founded fear of future persecution. The BIA summarily affirmed, and Li petitioned this court for review. We deny his petition.

Li testified that he has been a practicing member of an underground Christian congregation since being baptized in 1994. He said that life in his village in China's Fujian province had always been "peaceful" for the congregation's members, even though government officials occasionally harassed other congregants from nearby villages. He added that the pastor of his church was arrested in August 2000 and that the group had to raise $3,000 to obtain his release on bond. The congregation had no permanent meeting place; instead, its 200 members gathered at various places

throughout the ten villages in which they lived. Li explained that he was part of a group within the congregation that wanted to establish a permanent place of worship by reopening a church that was closed and damaged during the Cultural Revolution—the infamous campaign between 1966 and 1976 during which (among other things) all religions in China were forcibly repressed.

Li claimed that he ran into trouble with the government when he tried to help secure the necessary permit to rebuild and reopen the church. After the group's first application for a permit was denied without explanation, Li and three others went to the government office and reapplied. Li testified that the officials asked numerous detailed questions about members of the congregation. At the end of the meeting, the officials agreed that the group could begin tearing down the old church but added that the request to build a new church required further consideration. Relying on that advice, members of the congregation started preparing the old building for demolition.

The group's work at the church led to the primary incident underlying Li's asylum claim—an episode in September 2000 when three or four government officials came to the site. The officials announced that the group lacked a necessary permit and would have to stop working. A female worker began to argue, and one of the officials slapped her in the face. Li testified that he asked the officials "isn't there a law here?" and threatened to report them to the police. One of the officials lunged at Li, yelling that he should not dare to call the police. But the official tripped on some broken bricks, fell, and hit his head. One of the other officials yelled out that Li was under arrest, but Li turned and fled while other women in the congregation surrounded the officials so that they could not pursue him. Li made it home. Four hours later, he saw the man who had hit his head approaching Li's home with three or four police officers. Li fled out a back door and went to a friend's home. Li's parents later told him that the officers were so upset that they could not locate him that they arrested his father, detained him overnight, and beat him. The next day Li traveled to Fuzhou, where he stayed with another friend for three months. Although he admitted that the police never harassed him during the three months he was in Fuzhou, he explained that he was so afraid that he rarely left his friend's home. In December 2000 Li obtained a fake passport and paid a snakehead to smuggle him into the United States. He was apprehended attempting to sneak across the Mexican border into California.

The IJ found Li's testimony credible, but she denied his application because she found that these events did not add up to either past persecution or a well-founded fear of future persecution. This was primarily because the harm Li suffered was not serious enough to constitute persecution, as opposed to harassment. She also found that Li could not show that the actions taken against him were motivated by his religious beliefs. Instead, she concluded that "it appears more likely that [the officials] were angry with the respondent for interfering in government business and for insulting the government official."

Li first takes issue with the IJ's second conclusion: that the government officials' actions at the church were not motivated by his religious beliefs. A finding of persecution is appropriate only when the person suffers "punishment or the infliction of harm for political, religious, or other reasons that this country does not recognize as legitimate." *Liu v. Ashcroft*, 380 F.3d 307, 312 (7th Cir. 2004) (internal quotation and citation omitted). We agree with Li that the IJ's ruling on this point flies in the face of reality. The officials came to the church only after Li and his fellow congregants had tried to obtain a permit to rebuild the church, and the officials were attempting to stop the group from working on the church. There is no reasonable way to interpret the circumstances surrounding the incident other than as something targeted at the efforts of Li and the others to rebuild their church. We are thus compelled to conclude that the incident was related to Li's religious beliefs.

But it is not enough for Li to establish that the officials' actions were motivated by his religious beliefs. He must also show that he suffered harm rising above the level of "mere harassment." *Id.* (internal citations and quotation omitted). The IJ found that he did not. As she pointed out, he "was never harmed, he was never detained, [and] he was never deprived of the ability to earn a living." Especially in light of the substantial evidence standard of review that applies here, we see no reversible error in that conclusion. This was a single incident that, in itself, was more threatening than actually damaging. Threats alone are rarely enough to compel a finding of past persecution unless those threats are particularly immediate and menacing in nature. *Boykov v. INS*, 109 F.3d 413, 416 (7th Cir. 1997). We have previously upheld findings that aliens who suffered much greater harm than Li were not victims of past persecution. See*, e.g., Dandan v. Ashcroft*, 339 F.3d 567, 574 (7th Cir. 2003) (alien detained for three days, beaten until face was swollen, and deprived of food and water); *Yadegar-Sargis v. INS*, 297 F.3d 596, 602 (7th Cir. 2002) (Iranian Christian repeatedly confronted at her home by police, turned away from food rationing lines, forced to wear Muslim attire, and frequently harassed by guards at her church); *Boykov*, 109 F.3d at 416-17 (alien received death threats and witnessed friend's abduction by police, his family was arrested and detained overnight, and his wife was fired from her job). In contrast to the applicants in these cases, Li acknowledges that the government bothered him only on a single day and never had any interest in him during the previous six years he had been a practicing Christian.

Perhaps recognizing the weakness of his past persecution claim, Li focuses more of his energy in attempting to show that the IJ erred in refusing to find that he had a well-founded fear of future persecution. He must show that he has both an objective and a subjective fear of persecution on account of his religion if returned to China. *Tesfu v. Ashcroft*, 322 F.3d 477, 481 (7th Cir. 2003). The IJ was willing to assume that Li has a subjective fear of future persecution, but she rejected his effort to show that this fear was objectively reasonable. First, he failed to present the kind of "specific, detailed facts" that would support such a concern. *Medhin v. Ashcroft*, 350 F.3d 685, 690 (7th Cir. 2003). The IJ noted that Li explained only vaguely why the police would still want to question him upon his return, and he presented only one short statement

from a member of his congregation who witnessed the incident. The statement provided few details, saying only that Li was "the target of the attack on the construction site" and that he was later "pursued by the government." She also pointed to Li's uneventful three-month stay in Fuzhou after the incident as evidence that the government has no desire to persecute him.

We are not impressed by the latter point. As we had occasion to note in more extreme circumstances in *Chitay-Pirir v. INS,* 169 F.3d 1079 (7th Cir. 1999), an applicant "would not find it reassuring that by living a fugitive's life he can avoid execution." *Id.* at 1081. If the only way Li could remain safe were by staying underground, this would be a different case. But the record as a whole does not compel such a finding; to the contrary, it supports the IJ's decision that Li lacked an objective fear of future persecution. A person can be a victim of persecution even if he manages to elude his prospective persecutors and flee the country before being harmed. See *Miljkovic v. Ashcroft,* 376 F.3d 754, 756 (7th Cir. 2004). But Li presented no specific evidence suggesting that he would be harmed upon his return to China. He argues in general terms that the Chinese government remains hostile to Christians, but he offers nothing to show that he will be singled out by the authorities. Furthermore, Li does not claim that other members of the congregation have been harassed since he left or that the officials who interfered with the work at the church have done anything since that time that would suggest a desire to persecute the congregants for their religious beliefs. Perhaps most telling of all is the fate of Li's priest. Although Li testified that the priest was arrested and harassed by the authorities in the past, he does not claim that anything has happened to him since. Li never explained why he believes that he will be singled out for his religious activities when the authorities apparently have no interest even in the church's priest.

Finally, Li argues that the IJ erred by denying his applications for withholding of removal and relief under the Convention Against Torture. But the burden of proof for each of these forms of relief is higher than that for an asylum claim, and so Li's failure to establish his eligibility for asylum necessarily dooms these applications as well. See *Dandan,* 339 F.3d at 575 n.7. For these reasons, the petition for review is DENIED.