UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 28, 2006
Decided March 23, 2006

**Before**

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 05-1542

Ming Yun Cao,

                *Petitioner,*

       *v.*

Alberto R. Gonzales, Attorney General
of the United States,

                *Respondent.*

On Petition for Review
of an Order of the
Board of Immigration Appeals

No. A95-928-760

**O R D E R**

Claiming that she had been persecuted in China's Fujian Province because of her Christian activities, Ming Yun Cao applied for asylum, withholding of removal, and relief under the Convention Against Torture. The Immigration Judge denied relief, both because he found that Cao was not a credible witness and because he concluded that the events she recounted did not amount to persecution. The BIA rejected the IJ's adverse credibility finding but affirmed his determination that Cao failed to demonstrate past persecution or a well-founded fear of future persecution. Cao now

petitions for review of that judgment. We conclude that the BIA's decision was adequately supported by the evidence, and we therefore deny the petition.

**I**

Because the BIA assumed that Cao's testimony was credible, we report the facts as she portrayed them at her hearing. Cao testified that her family is Christian, although her father is more observant than her mother and none of her four siblings has been baptized. Her father left China in 1997 and applied for asylum in the United Kingdom in 1998, apparently on the ground of religious persecution. Cao herself was baptized by a priest in 2000; thereafter, she attended Bible study and prayer sessions with a family-organized church approximately three times per week in the homes of various church members. The size of the prayer group ranged from three to just over 10.

On April 3, 2002, Cao attended a religious service in a neighboring village led by a visiting priest from Fuzhou City, to observe (as Cao put it) the holiday on which Jesus was "nailed to the cross." In the middle of the service, the local Communist Party secretary and approximately five other people "broke[]" the door and charged into the home. The party secretary "slapped" the priest several times and ordered his subordinates to confiscate the church members' Bibles. When Cao refused to relinquish her Bible, she was hit "really hard" once in the head and became dizzy. At that point, the government officials callously stated that the church members "should be just beaten to death" and took them to jail.

Cao was detained overnight, but she was released after she was fingerprinted. As a condition of her release, she was forced to sign a statement promising never to attend church activities again. The circumstances were ominous: she was alone with a "huge and tall" police officer who demanded that she sign and who threatened that she would be "executed" if she was caught again. After her release, however, Cao continued often to attend religious gatherings. In the year between her release and her departure from China, she did not experience any further encounters with the authorities. Other church members were not so lucky: some were detained for a few days up to a few months, and the priest was still in a labor camp when Cao left China.

The IJ discounted Cao's testimony because she submitted no documentation corroborating her religious activities or the alleged incident of persecution, and no documents revealing the resolution of her father's asylum application in the United Kingdom. He also found it "rather intriguing" that Cao was not bothered by the authorities when she held religious activities in the clothing shop she operated, but she was detected and arrested when she went to a family church in a neighboring village. Furthermore, the IJ did not believe that Cao would have been able to obtain a passport, as she did, if she truly had been "brought to the attention of the authorities"

in China. He concluded, nonetheless, that even if Cao's testimony was credible, the single incident of arrest and abuse was too minor to satisfy the definition of persecution. In addition, he found that Cao had not shown a well-founded fear of future persecution, particularly because her family in China is "unaffected" and she was issued a passport and allowed to leave China. Finally, the IJ denied Cao's withholding of removal and CAT claims because her failure to meet the burden of proof for asylum meant also that she could not satisfy the more stringent burden of proof for these claims.

Acting through a single member, the BIA affirmed in a one-paragraph order the IJ's determination that Cao had demonstrated neither past persecution nor a well-founded fear of future persecution. In so doing, it noted in passing its disagreement with the IJ's adverse credibility finding. The BIA also summarily affirmed the dismissal of Cao's withholding of removal and CAT claims.

## II

This Court reviews the denial of an asylum claim for substantial evidence. We will reverse the decision of the BIA only if the evidence compels a different conclusion. *Hernandez-Baena v. Gonzales*, 417 F.3d 720, 723 (7th Cir. 2005); *Ahmed v. Ashcroft*, 348 F.3d 611, 615 (7th Cir. 2003).

Cao devotes the bulk of her brief to contesting the IJ's adverse credibility finding. This is a peculiar strategy, given the fact that the BIA in fact rejected the IJ's adverse credibility finding and rested its decision on the alternate ground that her testimony did not depict events that showed persecution. We have confined our review to the latter ground only. It is therefore unnecessary for us to review the reasons behind the IJ's credibility ruling, although we note for the record that it was inappropriate for the IJ to hold against Cao her apparent lack of knowledge of various aspects of Christian doctrine. See *Huang v. Gonzales,* 403 F.3d 945, 948-49 (7th Cir. 2005); *Muhur v. Ashcroft,* 355 F.3d 958, 960 (7th Cir. 2004).

While Cao's brief could (and should) have devoted more time to the question of past persecution, she at least touched upon those points, asserting that she conclusively demonstrated persecution through her testimony that she was beaten, arrested, and threatened with "severe consequences" on account of her religious activities. The BIA, however, was not compelled to view these experiences in such a harsh light. Unpleasant though it surely is, short-term imprisonment with no physical abuse does not constitute persecution, nor do generalized, non-specific assertions of physical abuse. *Prela v. Ashcroft*, 394 F.3d 515, 518 (7th Cir. 2005) (interrogations, 24-hour detention, and beating causing injury to petitioner's hands does not compel finding of persecution); *Liu v. Ashcroft*, 380 F.3d 307, 313 (7th Cir. 2004) (two-day detainment in which petitioner endured pushing and hair pulling followed by search of her home

with no serious damage did not compel finding of persecution); *Dandan v. Ashcroft*, 339 F.3d 567, 573-74 (7th Cir. 2003) (three-day detention, food deprivation and beating causing petitioner's face to swell does not compel finding of persecution). The experiences about which Cao testified were not as abusive as those presented by the unsuccessful petitioners in *Prela*, *Liu,* and *Dandan*. She was detained only once for only one day. She was hit on the head one time, but she alleges no other physical abuse or injury and no need for medical attention. The BIA was entitled to conclude that this was not enough to demonstrate persecution. See *Dandan*, 339 F.3d at 574; *Liu*, 380 F.3d at 313.

Cao also suggests that the past persecution of her father for his religious activities in some way buttresses her own claim. She does not develop this argument, nor does she claim that she herself was subjected to the same severe treatment as her father. See *Tamas-Mercea v. Reno*, 222 F.3d 417, 423-24 (7th Cir. 2000). Thus, even if the treatment of her father constituted persecution, we cannot impute his experiences to her.

Finally, Cao asserts that the police officer who forced her to sign the statement promising not to engage in further religious activities and threatened her with death if she broke her promise persecuted her. While threats "of a most immediate and menacing nature" may be enough to prove persecution, unfulfilled threats generally do not. *Hernandez-Baena v. Gonzales*, 417 F.3d 720, 723 (7th Cir. 2005); *Nakibuka v. Gonzales*, 421 F.3d 473, 477 (7th Cir. 2005); *Ahmed v. Ashcroft*, 348 F.3d 611, 616 (7th Cir. 2003). Here, the threat was not immediate, and Cao reported no further harassment by the authorities in the year between her arrest and her departure from China. The BIA reasonably concluded that the officer's threat was insufficient to establish past persecution.

Even if a petitioner cannot establish past persecution, she can still qualify for asylum if she can show (through both subjective and objective evidence) a well-founded fear of future persecution. *Giday v. Gonzales*, 434 F.3d 543, 553-54 (7th Cir. 2006). From a subjective point of view, the petitioner must show that she has a genuine fear of returning to her home country. *Asani v. INS*, 154 F.3d 719, 725 (7th Cir. 1998). Objectively, she "must 'present *specific, detailed* facts showing a good reason to fear that . . . she will be singled out for persecution.'" *Ahmed*, 348 F.3d at 618 (citations omitted) (italics in original).

Cao's discussion of the "future persecution" theory is again sketchy, but there is enough here for us to reach it. She asserts that the history of past persecution of herself and her family that she described, combined with her "earnest" commitment to continue her "pursuit for God," demonstrates a well-founded fear of future persecution on account of her religion. But the future persecution she anticipates is merely a continuation of the treatment she received in the past. As discussed above,

from an objective standpoint that treatment did not amount to persecution. See *Liu v. Ashcroft*, 380 F.3d 307, 313 (7th Cir. 2004); *Dandan v. Ashcroft*, 339 F.3d 567, 574 (7th Cir. 2003). Moreover, Cao does not identify any reasonably possible future treatment that would constitute persecution.

In any event, substantial evidence supports the BIA's determination that Cao does not have a well-founded fear of future persecution. We come to this conclusion despite some tension between the IJ's use of the State Department's 2002 China Country Report and Cao's testimony. The IJ noted that "the policy of the People's Republic of China is not to unduly harass unregistered churches who are unobtrusive, and apparently all the activities that the respondent has related here were activities that the Court would deem to be unobtrusive." This statement is troubling insofar as it fails to acknowledge Cao's testimony that she was harassed and arrested only when she attended an unofficial religious gathering in a neighboring village led by a visiting priest from Fuzhou City. Consistent with Cao's testimony, the Country Report says that family churches reportedly "encountered difficulties" when, among other things, "they forged links with other unregistered groups," as Cao asserts she was doing on the day she was arrested. The Country Report indicates that the difficulties encountered by unauthorized religious groups included harassment by the government, interrogations, detention, and physical abuse. Nonetheless, the Country Report contains only general conclusions, and the BIA was entitled to give greater weight to Cao's own account of the type of harassment inflicted upon her.

### III

Although the record indicates that Cao was the victim of one instance of harassment and physical abuse by the Chinese authorities on account of her religious activities, it does not compel a finding that she was persecuted or that she has a well-founded fear of future persecution if she returns to China. Because neither Cao's brief to the BIA nor her brief on appeal in this court addresses her claims for withholding of removal and relief under the Convention Against Torture, those claims are waived. *Huang v. Gonzales*, 403 F.3d at 951. We therefore DENY the petition for review.