**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued October 4, 2006
Decided  November 1, 2006

**Before**

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 06-1109

| | |
|---|---|
| DOMNICA BERINDE and VASILE BERINDE, *Petitioners*, | Petition for Review of an Order of the Board of Immigration Appeals |
| *v.* | Nos. A79 772 290, A78 408 146 |
| ALBERTO R. GONZALES, *Respondent*. | |

**ORDER**

Vasile and Domnica Berinde, husband and wife and Romanian nationals, petition for review of a Board of Immigration Appeals' (BIA) order denying their applications for asylum and the withholding of removal.  We deny Vasile's petition because we lack jurisdiction to review his asylum application, and substantial evidence supports the BIA's finding that he failed to meet his burden of proof for withholding of removal. Furthermore, specific, cogent reasons support the BIA's decision to deny Domnica's asylum application based on her lack of credibility.

Vasile and Domnica attempted to enter the United States using false documents. Vasile tried to enter through Miami using a false Austrian passport in September 2000, while Domnica attempted to enter through San Ysidro, California using a false green card in May 2001. They were both stopped by INS officers, who determined that they had a credible fear of being harmed if returned to Romania based on their political opposition to the reigning socialist party. The INS initiated removal proceedings and their cases were consolidated for review. The Berindes applied for asylum, withholding of removal, and relief under the Convention Against Torture (CAT).

Vasile testified at his removal hearing that his difficulties began in the 1980s, during his military service, when he had a "problem" for having a postcard sent by a friend in Italy. He was informed that it was illegal to maintain contact with foreigners, but he did not elucidate what consequences he believed he would face as a result of the incident.

The Berindes continued to associate with foreigners once they married and started a family, seeking medicine for their two daughters who were afflicted with a genetic disorder called Werning Hoffman disease. Vasile testified that he was prohibited from traveling abroad to help his daughters with their health problems because he was not a member of the communist party. However, in 1989, Vasile obtained foreign medicine for his youngest daughter through a former neighbor who had moved to the United States, but doctors refused to administer it. Vasile testified that, shortly thereafter, the police arrested and detained him for four days because of this contact with his former neighbor, and that he was "pushed, hit, swung at, and spit at by policemen" daily. (This testimony was at odds and in conflict with his asylum application, in which he described this arrest but failed to mention any physical abuse by the police, and with his airport screening interview conducted upon arriving in the United States in September 2000, at which he stated that he had never been arrested at all.) Vasile testified that both of his children died due to Werdnig Hoffmann disease.

Later in 1989, the communist regime was overthrown but the Berindes continued to have problems under the new government headed by Ion Iliescu, the leader of the Social Democratic Party of Romania (PDSR). When asked if he participated in politics after the Romanian revolution, Vasile stated that he "was advised to participate" in the PDSR, but refused to join. He testified that during a PDSR meeting in January 1996, he criticized the party's failure to fulfill its promises to provide free hospitalization and education and to create new jobs. Immediately following this meeting, Vasile testified, two party leaders threatened to "destroy" him because he "tried to destroy the image of their party." He testified that a week later, his small furniture shop was torched and set on fire, and the fire department determined that the blaze was intentional. Vasile blamed the PDSR

members, although he acknowledged at the hearing that he did not witness the act of arson.

Shortly after the fire Vasile fled to the United States to avoid further harm, but Domnica began encountering threats and harassment in Romania. Vasile testified that while he lived in the United States, Domnica told him that suspicious people followed her on the street, she received phone calls threatening "serious problems" and demanding information regarding Vasile's whereabouts, and there was a break-in of their home. In 1998, in hopes that she would no longer be targeted, they divorced.

Vasile returned to Romania in November 1999 and reunited with Domnica because he thought his criticism of the PDSR was long forgotten, but he encountered more threats shortly after his arrival. Vasile testified that when he criticized a PDSR mayor in a television interview in June 2000, a few days later PDSR members threatened him. A week later, a drunk driver hit Vasile's car and Vasile sustained minor injuries. After this incident, Domnica and Vasile feared for their safety and fled to the United States.

Domnica's testimony largely tracks Vasile's. However, in her asylum application, she stated that Vasile was "arrested and imprisoned" during his military service and she described his 1989 detention for importing medicine for his children as "house arrest." Domnica's asylum application also described Vasile as being "heavily involved in politics." On cross-examination, however, she backed off from that characterization. When reminded that Vasile testified that he was only invited to join the PDSR but declined, Domnica then explained, "no, that, that, that was it, it was just a beginning, but he gave up on it shortly afterwards."

The Immigration Judge (IJ) denied the Berindes' asylum applications because they failed to file within one year after their respective entries into the United States; Vasile filed his application over three years late and Domnica filed hers a day late. *See* 8 U.S.C. § 1158(a)(2)(B). The IJ also denied their applications for withholding because they failed to carry their burden of proof. The IJ noted three inconsistencies in the Berindes' testimony: (1) Vasile's hearing testimony regarding his military "problem," which Domnica described more severely as an arrest and imprisonment; (2) Vasile's removal hearing testimony regarding his 1989 arrest, detention and beating, which contradicted his airport screening interview where he denied ever being arrested; his asylum application which omitted facts about physical abuse; and Domnica's testimony which downplayed the event as a house arrest; and (3) Vasile's level of political involvement, which Domnica described as heavy though Vasile only testified that he refused to join the PDSR, criticized the party, and attended a couple of meetings. The IJ refused to credit the testimony regarding the military problem and his 1989 arrest, and discredited all of

Domnica's testimony. The IJ expressed skepticism regarding the intentional burning of Vasile's shop because of the lack of corroborating evidence. The IJ considered the Berindes' inability to get medical treatment abroad for their daughters and the car accident in 2000, but stated that neither incident rose to the level of persecution. The IJ also denied relief under the CAT because the Berindes failed to meet their burden of proof.

The BIA adopted and affirmed the IJ's denial of Vasile's requests for relief. The BIA adopted and affirmed the IJ's opinion as to Domnica only "to the extent he denied the respondent's claims for relief from removal based upon her failure to carry her burden of proof and provide credible testimony and evidence." The BIA further noted that, "[e]ven conceding that the respondent's application for asylum was timely filed," it still failed due to her "lack of veracity."

## Discussion

## Vasile's Petition for Review

We are without jurisdiction to review the denial of Vasile's asylum application. To be eligible for asylum, an applicant must file his application within one year of his entry, unless he can demonstrate "changed circumstances" or "extraordinary circumstances" that might justify an extension of this deadline. 8 U.S.C. § 1158(a)(2)(B). Only the Attorney General, who oversees the IJs and the BIA, can decide whether an asylum application was timely filed or whether these exceptions apply; we are without jurisdiction to review these determinations. *See* 8 U.S.C. §§ 1158(a)(3); *Vasile v. Gonzales*, 417 F.3d 766, 768 (7th Cir. 2005). The IJ and BIA both found Vasile's asylum application untimely and held that an extension of the deadline was inappropriate; thus, this court has no jurisdiction to review Vasile's asylum claim.

Regarding the denial of his application for withholding, Vasile contests the IJ's refusal to credit his testimony regarding the 1989 arrest for importing medicine. He argues that any discrepancies between his asylum application and hearing testimony were insignificant because they made the same fundamental point: "[he] was detained and beaten based on his political beliefs."

We review the IJ's denial under the deferential substantial evidence standard, and can reverse only if the evidence compels a different result. *See Prela v. Ashcroft*, 394 F.3d 515, 518 (7th Cir. 2005). We may overturn an IJ's adverse credibility determination only if that determination is not supported by "specific, cogent reasons" that "bear a legitimate nexus to the finding." *Gjerazi v. Gonzales*, 435 F.3d 800, 807 (7th Cir. 2006) (citations and quotations omitted). If an adverse credibility determination is based on inconsistent testimony, the discrepancies must

go to the heart of an applicant's claim. *See Gidday v. Gonzales*, 434 F.3d 543, 550 (7th Cir. 2006).

The IJ correctly discredited Vasile's testimony dealing with his 1989 arrest and noted that it was "materially inconsistent" with Vasile's asylum application and airport screening interview. During the removal hearing, Vasile testified in detail about the 1989 arrest, stating that he was beaten daily with rubber sticks. However, in his asylum application, he did not mention being physically abused apart from having his hands tied behind his back and being threatened with beatings. Further, when he first entered the United States, Vasile told INS officers that he had never been arrested at all. These significant inconsistencies go to the heart of this claim, and therefore the IJ properly discredited this testimony.

Vasile's remaining testimony regarding the 1996 fire and the 2000 car accident does not compel us to find him eligible for withholding of removal. To be eligible for withholding of removal, Vasile "bears the burden of demonstrating that loss of life or freedom is more likely than not." *Kobugabe v. Gonzales*, 440 F.3d 900, 901 (7th Cir. 2006). If Vasile can establish that he has suffered past persecution on account of his political opinion, this "may imply a future threat and so require the agency to demonstrate that conditions have improved." *Id.* *See also* 8 C.F.R § 1208.16(b)(1)(i). We have defined persecution as "punishment or the infliction of harm for political, religious or other reasons that this country does not recognize as legitimate." *Liu v. Ashcroft*, 380 F.3d 307, 312 (7th Cir. 2004) (citations and quotations omitted).

The 1996 fire and 2000 car accident do not rise to the level of persecution. The IJ properly noted that there is no evidence, beyond Vasile's speculation, that the fire was caused by the PDSR party leaders or on account of his political opinion. *See Tamas-Merca v. Reno*, 222 F.3d 417, 425 (7th Cir. 2000) (affirming denial of asylum application where evidence that government killed applicant's children was "too speculative.") Without more, the murky circumstances surrounding the fire do not amount to persecution. Neither does the 2000 car accident amount to persecution because Vasile failed to prove that the accident was on account of his political opinion. Vasile testified that the driver was drunk, therefore substantial evidence supports the IJ's determination that the accident was caused on account of the driver's drunken state, not on account of Vasile's political opinion. Vasile offered no other evidence that compels us to find that he faces a loss of life or freedom in Romania, therefore the IJ properly denied his request for withholding of removal.

**Domnica's Petition for Review**

Domnica argues that the IJ did not provide cogent reasons for his adverse credibility determination. The IJ based his credibility finding based on the

discrepancies between Domnica's testimony regarding (1) Vasile's military punishment, (2) his 1989 detention or house arrest, and (3) his level of political involvement. Domnica focuses on the third discrepancy, which centers on whether Vasile's public criticism of the PDSR and his refusal to join the party meet the definition of "heavily involved in politics." Domnica argues that there is no discrepancy between her asylum application and Vasile's testimony because they both assert that Vasile was persecuted based on his political opposition to the PDSR. *See Ssali v. Gonzales,* 424 F.3d 556, 563 (7th Cir. 2005) (overturning IJ's adverse credibility finding because omission of party membership in asylum application is insignificant when both application and testimony alleged detention and torture based on political beliefs).

The IJ gave a reasonable explanation for discrediting Domnica: her characterization of Vasile's political involvement was inconsistent with Vasile's testimony. When given a chance to explain this inconsistency, Domnica downplayed the phrase "heavily involved in politics," explaining that Vasile showed some political interest but "gave up on it shortly afterwards." The IJ correctly noted that Domnica did more than just choose different words to express the same idea; she "attempted to alter her testimony so that it [was] consistent with Vasile's." Domnica offers no reasons that compel the IJ to find her credible; therefore, her asylum application was properly denied.

Because we are without jurisdiction to review Vasile's asylum application, and because he has failed to carry his burden of proof for withholding of removal, we DENY his petition for review. Because the IJ's adverse credibility determination regarding Domnica is supported with specific, cogent reasons, we also DENY her petition for review.