

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-17-2008

# Razzak v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1911

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Razzak v. Atty Gen USA" (2008). *2008 Decisions*. Paper 833.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/833

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 07-1911 & 07-3177
_____

ABDUL MALIK RAZZAK; AISHA SIDDIQUE MALIK;
MUHAMMED ZUNAIR MALIK; MUHAMMED AMIR MALIK;
MUHAMMED OMAIR MALIK,

Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondents

_____

On Petition for Review of Orders of the
Board of Immigration Appeals
BIA Nos. A95-468-123/124/125/126/127
(U.S. Immigration Judge:  Honorable Charles M. Honeyman)

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 9, 2008
Before:  SCIRICA, Chief Judge, CHAGARES and ALDISERT, Circuit Judges.

(Filed: July 17, 2008)
_____

OPINION OF THE COURT
_____

PER CURIAM.

The petitioners, a family from Pakistan, seek review of two orders of the Board of

Immigration Appeals ("BIA").  For the following reasons, we will deny the petitions for

review.

I.

The petitioners (a mother, father, and their three minor children) entered the United States as visitors in 2001. They overstayed their visa, and were found removable. They filed a timely application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT")[1] claiming that they had been persecuted in Pakistan for being Mohajirs (Urdu-speaking Muslims who fled India after the 1947 partition and settled in the Sindh province), and due to imputed membership in the Muttahida Quami Movement ("MQM"). The MQM, "formerly known as the Mohajir Quami Movement, is a political group which represents the Urdu-speaking immigrant urban Mohajir population." Shah v. Attorney Gen., 446 F.3d 429, 431 n.4 (3d Cir. 2006). The petitioners believe that it continues to be dangerous for them to return to Pakistan.

The family's claim of past persecution is based on three incidents spanning three years in which the two eldest sons were detained by police. The petitioners' testimony at the removal proceedings revealed that they had lived in an ethnically mixed neighborhood in Karachi. Their neighborhood was considered unsafe because it was near a predominantly Mohajir area. In 1999, 2000, and 2001, the boys were picked up by the police while they were outside playing with friends on days when the MQM and Hakiki (a breakaway faction) were striking. Zunair, the eldest son, testified that he believed that

---

[1]United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, implemented in the United States by the Foreign Affairs Reform and Restructuring Act of 1998, 8 U.S.C. § 1231.

they were likely picked up because there was unrest on strike days and the police probably thought that they were throwing stones and causing trouble. During each police detention (which lasted from one to three hours), the boys were interrogated about their family's involvement in the MQM and about whether they were Mohajirs. In at least one instance, the police slapped them, pulled their ears, and hit them with a capped stick.

The police called the boys' mother each time they were in custody.[2] And each time she picked them up from the police station she was questioned about whether she was a Mohajir and whether she was in the MQM. The police insulted her, and in one instance, pushed her with a gun. During the second incident (2000), the police demanded money for the boys' release, which she paid. And during the third incident (January 2001), she went to the police station with a group of neighbors because their children had also been picked up. The police again demanded money, but the group refused to pay. When the boys were released, the police told the mother that if they saw the children out again they would "pick them up and . . . take them to a place where [she] will never be able to see them anymore." Additionally, during this time, the mother received three or four phone calls, which she believes were from the police, asking about the MQM and for information about other peoples' political affiliations.

The family testified that the boys were seriously affected by the police detentions. They were very frightened, cried, and could not sleep. To support the claim that the boys

---

[2]The father worked on a cargo ship and was away each time the boys were detained.

were psychologically damaged, the petitioners introduced a psychologist's report diagnosing the boys with post-traumatic stress syndrome.

The father then testified that in July 2001—six months after the last police detention—he took the family to Disneyworld because he believed that they needed a break and because Pakistan was becoming too dangerous. They remained in the U.S. after their extended visa expired, and settled in Upper Darby, Pennsylvania, where the boys attend school. They have been good students, and have had no problems with the police.

Although the Immigration Judge ("IJ") found the petitioners credible, he held that the incidents described did not amount to persecution, and that the petitioners did not substantiate their claim of a well-founded fear of future persecution with objective evidence. He thus denied their claim for asylum as well as their claims for withholding of removal and relief under the CAT. He did, however, grant them voluntary departure. The BIA adopted and affirmed the IJ's decision. The BIA agreed that the harm the petitioners suffered did not amount to persecution and that their fear of future persecution was speculative. The BIA also rejected the petitioners' argument that the IJ disregarded the psychologist's report. The petitioners then filed a motion for reconsideration claiming that the BIA and IJ did not consider the asylum claims in the context of the harm's impact on the juvenile petitioners. In a June 25, 2007 per curiam opinion, the BIA denied the

4

motion and stated that the record "makes it clear that the Immigration Judge and the Board gave appropriate consideration to the ages of the minor respondents."

At the same time the petitioners filed the motion for reconsideration, they also filed a petition for review of the BIA's February 26th decision with this Court. (C.A. No. 07-1911.) After the BIA denied the motion for reconsideration, they also filed a petition for review of the denial of that motion. (C.A. No. 07-3177.)

## II.

Because the petitioners timely filed petitions for review as to the BIA's order affirming the IJ's opinion and the order denying the motion for reconsideration, this Court has jurisdiction over both of those orders. See Stone v. INS, 514 U.S. 386, 405 (1995) (requiring that separate timely petitions be filed to allow review of two separate final orders). Thus, before the Court are the petitioners' now-consolidated petitions for review of the BIA's February 26th and June 25th orders. We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252(a)(1). Abdulai v. Ashcroft, 239 F.3d 542, 547 (3d Cir. 2001).

### A. The BIA's February 26, 2007 Order

The petitioners seek review of the BIA's order affirming the IJ's denial of their claims for asylum, relief under the CAT, and withholding of removal. Because the BIA adopted and affirmed the IJ's decision "to the extent" that the IJ determined that the petitioners did not establish that they suffered past persecution or have a well-founded

5

fear of future persecution, but also discussed the bases for the IJ's decision, we review the decisions of both the BIA and IJ. Chen v Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). The factual findings are reviewed for substantial evidence, and the legal conclusions are reviewed de novo. Briseno-Flores v. Attorney Gen., 492 F.3d 226, 228 (3d Cir. 2007). Here, the BIA's and IJ's conclusions concerning the petitioners' failure to meet their burden of proof regarding past persecution or a well-founded fear of future persecution are supported by substantial evidence. See Kayembe v. Ashcroft, 334 F.3d 231, 234 (3d Cir. 2003).

The IJ concluded that the boys were apprehended through apparent sweeps on days of increased violence and instability, and acknowledged that the boys were mistreated to the "extent that they were perhaps verbally abused, slapped and had minimal physical interaction with the police." The IJ also found that the police inappropriately used the boys' detentions as an "opportunity to extort or shakedown families for money." The BIA agreed that the "three brief detentions of the . . . minor children by the police, in which the children were verbally abused, pushed and slapped, do not rise to the level of past persecution."

Although the police detentions were undoubtedly traumatic for the entire family, and especially the children, we agree that three very brief detentions over the course of three years fail to rise to the level of persecution. See Kibinda v. Attorney Gen., 477 F.3d 117, 119 (3d Cir. 2007) (finding that five-day detention of a 16-year-old boy by Angolan

6

army did not rise to the level of past persecution, as the conduct complained of was not "extreme"); cf. Voci v. Gonzales, 409 F.3d 607, 615 (3d Cir. 2005) (finding that multiple severe beatings and intimidation tactics rose to the level of persecution).

Moreover, neither the threats at the police station nor the phone calls demanding information about the family's and others' political affiliation amount to past persecution, whether considered on their own or in conjunction with the police detentions. See Li v. Attorney Gen., 400 F.3d 157, 164 (3d Cir. 2005) ("Threats standing alone . . . constitute persecution in only a small category of cases, and only when the threats are so menacing as to cause significant actual suffering or harm.") (internal citations omitted). Although threatening to take the boys away if they were picked up again could be considered a threat of "a highly imminent and menacing nature," its import is diminished because the family was able to remain at home without trouble from the police until they left for the United States six months later. Id. at 164-65.

With regard to future harm, the BIA agreed with the IJ that while the petitioners "honestly and subjectively present[ed] genuine anxieties about living in Pakistan," they did not establish a likelihood of future persecution on the basis of their imputed political opinion or status as Mohajirs. Although Pakistan may be a generally dangerous place to live, the petitioners did not provide specific, detailed facts showing that they had good reason to fear that they would be singled out for persecution, nor did they demonstrate that a pattern or practice of persecution exists against Mohajirs or MQM members.

7

Ahmed v. Ashcroft, 348 F.3d 611, 618 (7th Cir. 2003); Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir. 2005). The IJ found that the country condition reports showed that although politically active Mohajirs and MQM members could be at risk, the petitioners—who were not politically active—did not introduce "adequate objective evidence" that would establish a likelihood of their future persecution. This conclusion is supported by substantial evidence.

The petitioners also argue that the IJ and BIA did not consider a psychologist's report diagnosing the boys with post-traumatic stress syndrome. However, the BIA specifically found that the IJ considered the report and noted that the IJ referenced the report in his decision. This determination is supported by substantial evidence. It is true that the IJ did not specifically discuss the diagnoses in making his decision, but the transcript demonstrates that the psychologist's report was discussed and introduced, and the IJ's oral opinion specifically states that the court accepted the report. Moreover, the IJ noted that it was "the Court's position and the Government didn't have any objection to accepting [the] psychological evaluation . . . along with the psychological assessment and the results of the exam." As the BIA determined, there is no indication that the IJ ignored this evidence, and the record shows that the IJ "reviewed the record and grasped the movants['] claims," which is all it is required to do. Shardar v. Attorney Gen., 503 F.3d 308, 317 (3d Cir. 2007) (quoting Sevoian v. Ashcroft, 290 F.3d 166, 178 (3d Cir. 2002)).

Thus, the petitioners have not demonstrated that the BIA's and IJ's opinions were not supported by substantial evidence.

## B. The BIA's June 25, 2007 Order

A motion for reconsideration is a "request that the Board re-examine its decision in light of additional legal arguments, a change of law, or perhaps an argument or aspect of the case which was overlooked." In re Ramos, 23 I. & N. Dec. 336, 338 (BIA 2002). To succeed on their petition for review, the petitioners must show that the BIA's decision denying reconsideration was somehow "arbitrary, irrational, or contrary to law." Tipu v. INS, 20 F.3d 580, 582 (3d Cir. 1994). They have not made this showing. Their motion for reconsideration is based on their contention that the IJ and the BIA did not consider the ages of the juvenile respondents in determining whether they had been persecuted. The BIA denied the motion because the record made it "clear that the Immigration Judge and the Board gave appropriate consideration to the ages of the minor respondents."

The petitioners assert that the BIA erred by "refusing to recognize agency guidelines that it should have applied a lower standard for determining persecution of a minor." They acknowledge, however, that the 1998 memorandum from Acting Director of the INS Office of International Affairs[3] ("Weiss Memorandum") is not controlling, but

_____

[3]The memorandum, entitled "Guidelines for Children's Asylum Claims," recognizes that "the harm a child fears or has suffered . . . may be relatively less than that of an adult and still qualify as persecution." See Mansour v. Ashcroft, 390 F.3d 667, 680 (9th Cir. 2004) (cited in dissent).

argue that this Court should follow some of its sister circuits and find that "age can be a critical factor in the adjudication of asylum claims and may bear heavily on the question of whether an applicant was persecuted." Liu v. Ashcroft, 380 F.3d 307, 314 (7th Cir. 2004; see also Hernandez-Ortiz v. Gonzales, 496 F.3d 1042, 1045-46 (9th Cir. 2007); Jorge-Tzoc v. Gonzales, 435 F.3d 146, 150 (2d Cir. 2006).   In this case, however, there is no reason for us to hold that the Immigration Court must follow the Weiss Memorandum because the IJ acknowledged the minor petitioners' status as children,[4] and substantial evidence supports the determination that the treatment that the boys endured does not rise to the level of persecution.  See Liu, 380 F.3d at 314.  Accordingly, the BIA's denial of the motion for reconsideration was not "arbitrary, irrational, or contrary to law." Tipu, 20 F.3d at 582.

For these reasons, and after careful consideration of the record and the parties' contentions, we will deny the petitions for review.

---

[4]For example, the IJ stated that "the police took inappropriate steps perhaps in investigating through fairly young children in trying to extract information from them." (A.R. at 38.)